# United States Court of Appeals
## For the First Circuit

No. 07-1658

QUN LIN,

Petitioner,

v.

MICHAEL MUKASEY, Attorney General,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Circuit Judge</u>,
John R. Gibson,[*] <u>Senior Circuit Judge</u>,
and Howard, <u>Circuit Judge</u>.

<u>Khagendra Gharti-Chhetry</u> on brief for petitioner.
<u>Margaret A. O'Donnell</u>, Trial Attorney, with whom <u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division, and <u>Aviva L. Poczter</u>, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, U. S. Department of Justice, were on brief for respondent.

March 26, 2008

---

[*]Hon. John R. Gibson, of the Eighth Circuit, sitting by designation.

**JOHN R. GIBSON**, <u>**Senior Circuit Judge**</u>.    Qun Lin, a native and citizen of the People's Republic of China, petitions for review of an order of the Board of Immigration Appeals denying his claims for asylum, withholding of removal, and relief under the Convention Against Torture.   Qun Lin contends that the BIA arrived at an adverse credibility finding that was not supported by substantial evidence.   We deny the petition.

On June 14, 2005, Qun Lin applied for asylum and other relief alleging that he had been imprisoned and mistreated by Chinese authorities on account of his practice of Falun Gong, a meditative practice outlawed by the Chinese government in 1999.

He testified at his hearing that he began practicing Falun Gong to improve his health in November 1998, before the practice was banned.  He worked in a garment factory, and he had suffered fainting spells on the job.  He began to practice Falun Gong with his uncle, privately, in his uncle's house or foyer. When Falun Gong was outlawed, he continued to practice until February 2003, when he was picked up and taken to a labor camp in Linjiang County.  He said that he was sentenced to three months in the camp and that while he was there, he was interrogated and told to stop practicing Falun Gong.  He said his captors slapped and punched him and that he was beaten over twenty times.  He said that "when they beat me up there, I lost consciousness and they never taken me to the hospital."  After serving a three-month sentence,

he was released.  He said that when he was released, he "could barely walk," and that it took about a month to recover from his injuries.  He went to a traditional doctor for treatment.

In 2004, he contacted a smuggler, whom he paid 40,000 Chinese RMB to transport him to the United States.  He left China using his own passport, then traveled through Hong Kong, Guatemala, and Mexico.  He finally entered the United States without inspection on or about October 4, 2004, at or near Hidalgo, Texas. He applied for asylum, withholding of removal, and relief under the Convention Against Torture.

The Immigration Judge hearing his case found that Qun Lin was not a credible witness, primarily because of inconsistencies in his testimony concerning the circumstances of his arrest and imprisonment.  Qun Lin had initially testified that he last worked for the garment factory in February 2003 "right before I got arrested."  On cross-examination, he said he had stopped working before his arrest in February 2003 due to a workplace injury.  On further questioning, Qun Lin testified that he did not stop working at the factory until May 13, 2003, which would have been after his arrest and release on May 7 of that year.  The IJ observed that Qun Lin's statements about when he stopped working were inconsistent and that his statement that he returned to work immediately after his release from the camp was inconsistent with his testimony that he was so injured during his imprisonment that he could hardly walk

-3-

when he was released.  The IJ found that Qun Lin "was never able to reconcile this discrepancy."

The IJ further remarked on inconsistencies about Qun Lin's current practice of Falun Gong in the United States.  Qun Lin said he only practiced Falun Gong about twice a month here, but on questioning about why he did not practice more often, he said that his master had advised him that the best way to do Falun Gong was mentally.  In response to the IJ's questions, Qun Lin conceded that he could practice mental Falun Gong in China without anyone ever knowing.  Based on this concession, the IJ found that Qun Lin did not have a reasonable basis to fear future persecution if he returned to China.

The IJ also relied on the fact that a Chinese passport was lawfully issued to Qun Lin during the time that he alleges that he was being harassed by the Chinese government.  She also remarked that Qun Lin gave no details to support his claim of harassment after his release from the work camp.

Finally, the IJ remarked that in light of the weakness of Qun Lin's own testimony, his claim would have been bolstered by corroborative documentation showing that he had in fact been treated for serious injuries in May 2003, but that Qun Lin did not produce any such corroboration.  The IJ concluded that, having failed to establish his eligibility for asylum, Qun Lin also failed to substantiate his claims for withholding of removal and relief

-4-

under the Convention Against Torture, both of which were based on the same testimony the IJ rejected as incredible.

Qun Lin appealed to the BIA, which issued a reasoned decision affirming on the ground that the IJ's adverse credibility finding was not clearly erroneous. See 8 C.F.R. § 1003.1(d)(3)(i) (BIA reviews IJ's findings for clear error).

Qun Lin petitions for review of the BIA decision. He contends that the IJ's adverse credibility finding was not supported by substantial evidence and that the IJ failed to take into account background evidence on country conditions that he introduced into the record.

We review the BIA's findings of fact according to the administrative substantial evidence standard, under which the agency's findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary of the finding. Albathani v. INS, 318 F.3d 365, 372 (1st Cir. 2003); 8 U.S.C. § 1252(b)(4)(B). In assessing whether the findings are supported by the record, we review the entire record, not merely the evidence that supports the BIA's conclusions. Albathani, 318 F.3d at 372. We review the BIA's conclusions of law de novo, giving the appropriate deference to the agency's interpretation of the statute it administers. Id.

Where the BIA does not adopt the IJ's findings, we review the BIA's decision rather than the IJ's. Georcely v. Ashcroft, 375

F.3d 45, 49 (1st Cir. 2004). Where the BIA adopts the IJ's ruling, but also engages in discussion of its own, we review the decisions of both together. Hem v. Mukasey, 514 F.3d 67, 69 (1st Cir. 2008). The government contends that the BIA adopted the IJ's decision, and Qun Lin contends it did not. The BIA's decision does not say that it adopts the IJ's decision, but only that the IJ's findings were not clearly erroneous.[1] Accordingly, we review the BIA's ruling.

I.

Qun Lin argues that his testimony was not self-contradictory because he "consistently testified that his employment was terminated in February 2003 immediately before his arrest." But he did not stick to this story. He also testified, "I stopped working in May after I got released." When confronted with the inconsistency, he affirmed, "I stopped working in May," then specified May 13. Later, on redirect he said he quit working at the factory in February "[b]ecause I got arrested and detained by Chinese government for three months." The record supports the finding that there were internal contradictions in Qun Lin's testimony.

---

[1]The BIA adopted the clear error standard of review advisedly in a regulation that became effective on September 25, 2002. See 8 C.F.R. § 1003.1(d)(3)(i); Board of Immigration Appeals: Procedural Reforms To Improve Case Management, 67 F.R. 54878, 54888-54891 (Aug. 26, 2002). Neither party addresses the somewhat metaphysical question of whether we should review the BIA's legal conclusion that the IJ's findings were not clearly erroneous or the underlying findings of fact themselves. The distinction would not affect the result in this case, so we need not belabor it.

Qun Lin contends that these contradictions were too minor to support the adverse credibility determination.[2] Under our case law, an adverse credibility determination may not be predicated on inconsistencies in an applicant's testimony that do not go to the heart of the applicant's claim. Bojorques-Villanueva v. INS, 194 F.3d 14, 16 (1st Cir. 1999). This rule has been superceded by the Real ID Act of 2005, Pub. L. No. 109-13, div. B, tit. I, § 101(a)(3), 119 Stat. 302, 303 (codified at 8 U.S.C. § 1158(b)), in cases in which the application for asylum, withholding, or other relief from removal was filed on or after May 11, 2005, the effective date of the Act. See 8 U.S.C. § 1158 note (Effective and Applicability Provisions). Qun Lin applied for asylum on June 14, 2005, and so his case is governed by the Act. The Real ID Act overhauled the methodology to be used by the trier of fact in making credibility determinations in asylum and withholding cases. The new language provides:

> Credibility determination. Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the

---

[2]The record reveals another apparent inconsistency that goes to the heart of Qun Lin's claim, in that he testified at the hearing that he had been beaten more than twenty times while in the labor camp, but his asylum application seems to refer to only one beating ("In April, I was beaten up by the police at the facility while handcuffed. I eventually lost my consciousness."). Because the BIA did not note this inconsistency, we may not rely on it. See Nagi El Moraghy v. Ashcroft, 331 F.3d 195, 205 (1st Cir. 2003).

applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, **without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim**, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii) (emphasis added); see also 8 U.S.C. §§ 1231(b)(3)(C) & 1229a(c)(4)(C). The import of the highlighted language is to eliminate the "heart of the claim" rule.[3]    See

---

[3]The early remarks on H.R. 418, 109th Cong. (2005), reprinted at 151 Cong. Rec. H536-41 (daily ed. Feb. 10, 2005), reveal an intent by its proponents to overrule certain unspecified opinions of the Ninth Circuit that were thought to unduly restrain an IJ's ability to judge credibility. See, e.g., 151 Cong. Rec. at H549-50 (Remarks of Mr. Sensenbrenner: bill "brings back sanity to the asylum laws by overturning these rogue precedents from the ninth circuit"); id. at H551 (Remarks of Mr. Hostettler: "These provisions merely overturn Ninth Circuit Court decisions saying that immigration judges cannot use inconsistencies in an alien's statement to determine if he or she is being untruthful."); see generally Abovian v. INS, 257 F.3d 971, 977-79 (9th Cir. 2001) (Kozinski, J., dissenting from denial of rehearing en banc) (critique of Ninth Circuit rule requiring materiality of inconsistencies for use in credibility determinations).  However, in conference, opponents of the credibility provisions succeeded in modifying the language somewhat, to add "Considering the totality of the circumstances," as well as certain other language not directly relevant to the heart of the claim issue.  Compare H.R. 1268, div. B., tit I, § 101(a), 109th Cong. (1st Sess. 2005) (reported in House March 16, 2005), with H.R. 1268, div. B., tit. I, § 101(a) (Enrolled as Agreed to or Passed by Both House and Senate).  The Conference Report for the Real ID Act states that, notwithstanding the Act's amendments to the rules for credibility determinations then prevailing in the Ninth Circuit, such determinations must still be "reasonable" and "take into consideration the individual circumstances" of the applicant.  H.R. Rep. No. 109-72, at 167 (2005), reprinted in 2005 U.S.C.C.A.N. 240, 292.    Senator Brownback, who had opposed the credibility

Castañeda-Castillo v. Gonzales, 488 F.3d 17, 23 n.6 (1st Cir. 2007) (en banc) (in case in which Real ID Act not applicable, stating that under Real ID Act "fact-finder is entitled to draw the falsus in omnibus inference based on inaccuracies, inconsistencies, or falsehoods, without regard to whether they go to the heart of the applicant's claim," although the amendment would not have changed result in case at bar) (internal quotation marks and punctuation omitted); Chen v. U.S. Att'y Gen., 454 F.3d 103, 106-07 n.2 (2d Cir. 2006) (per curiam) (in case in which Real ID Act inapplicable, stating that new provision would seem to overrule certain Second Circuit credibility determination rules); Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1233 (11th Cir. 2006) (applying Real ID Act;

---

provisions, suggested that after the conference, the heart of the claim rule should still be applicable because a contrary rule would not be "reasonable." 151 Cong. Rec. S4838 (daily ed. May 10, 2005) ("It would not be reasonable to find a lack of credibility based on inconsistencies, inaccuracies or falsehoods that do not go to the heart of the asylum claim without other evidence that the asylum applicant is attempting to deceive the trier of fact."). Thus, Senator Brownback relied on a term that found its way into the committee report, though not the statute itself. To the extent that Senator Brownback's remarks conflict with the plain language of the statute, we cannot elevate legislative history over the statute as enacted. United States v. Shreveport Grain & Elevator Co., 287 U.S. 77, 83 (1932). However, the requirement of reasonableness in the conference report could be read to contemplate a rationality requirement that is less stringent than the old heart of the claim rule, but stops short of allowing credibility decisions based on inconsistencies that no rational person could consider relevant to a witness's truthfulness. Resolution of that precise question should await a case in which it would make a difference to the outcome, which it does not in this case, since we cannot say it would be irrational to consider the inconsistencies in this case relevant to Qun Lin's truthfulness.

rejecting argument that discrepancy was trivial); <u>Jibril</u> v. <u>Gonzales</u>, 423 F.3d 1129, 1138 n.1 (9th Cir. 2005) (opining that if Real ID Act applied to the case, it would change result dictated by Ninth Circuit's heart of the claim rule); <u>In re J-Y-C-</u>, 24 I.& N. Dec. 260, 265 (BIA 2007) (not necessary under Real ID Act that inconsistencies relied on in credibility determinations go to the heart of the claim). <u>But see</u> <u>Kadia</u> v. <u>Gonzales</u>, 501 F.3d 817, 821-22 (7th Cir. 2007) (in case in which Real ID Act not applicable, expressing skepticism that Real ID Act revives "discredited" doctrine of <u>falsus in uno, falsus in omnibus</u>). Consequently, we may not reverse the BIA's decision on the ground that the inconsistencies it relied on in affirming the adverse credibility do not go to the heart of Qun Lin's claim.

## II.

Qun Lin contends that the BIA did not take into account the background information that he offered regarding persecution of Falun Gong adherents. State Department country reports are relevant in assessing an asylum applicant's credibility because they can corroborate his story. <u>Nagi El Moraghy</u> v. <u>Ashcroft</u>, 331 F.3d 195, 203-04 (1st Cir. 2003). Moreover, the BIA is required to consider all relevant evidence in the record. <u>See</u> <u>Gailius</u> v. <u>INS</u>, 147 F.3d 34, 45 (1st Cir. 1998). However, the agency is not required to discuss every piece of evidence offered regardless of its relation to the actual grounds of the administrative decision,

see Morales v. INS, 208 F.3d 323, 328 (1st Cir. 2000). When the BIA's decision is neither inconsistent with the background evidence nor gives reason to believe the BIA was unaware of it, we have no reason to doubt that the agency considered the evidence. Here, nothing in the BIA's decision questions the persecution of Falun Gong adherents in China or is inconsistent with the fact that such persecution has occurred. The BIA's decision focused only on inconsistencies pertaining to Qun Lin's personal story, not on anything that could be affected by the background materials he offered, as, for example, if the IJ had found it implausible that Qun Lin would be arrested for exercising in his uncle's house. We see no reason to surmise that the BIA overlooked the background information in the record.

Finally, Qun Lin argues that the BIA erred in relying on the fact that he was able to leave China using his own passport, despite his assertion that he was being constantly harassed by Public Security officials because of his association with Falun Gong. An asylum applicant's ability to leave the alleged country of persecution using his own identification documents may undermine a claim that the applicant was being pursued by the government. See Journal v. Keisler, 507 F.3d 9, 13 (1st Cir. 2007); Kheireddine v. Gonzales, 427 F.3d 80, 87 (1st Cir. 2005); see also Ali v. Gonzales, 401 F.3d 11, 16 (1st Cir. 2005).

Because the BIA did not err in rejecting Qun Lin's

-11-

testimony as incredible, it did not err in rejecting his claims for asylum, withholding of removal, and relief under the Convention Against Torture, all of which depended vitally on that testimony.

The petition for review is DENIED.