OPINION OF THE COURT
PER CURIAM.
Huo Xing Huang petitions for review of an order of the Board of Immigration Appeals (BIA), which dismissed his appeal from an Immigration Judge’s (IJ’s) final *858 removal order. We will deny the petition for review.
I.
Huang is a native and citizen of China. He entered the United States in 2004 without proper documentation, and was placed in removal proceedings. He applied for asylum and related relief. Huang testified that he and his wife had twin girls in 1990, and that birth control cadres forcibly took his wife for sterilization in 1991. Huang said that his wife had the sterilization surgically reversed, and she had a son in 1999. In March 2000, the Huangs were found to be in violation of the population policy. Huang’s wife was forced to pay a fine in order to register her son. She was taken away to be sterilized, but the government decided it could not sterilize her because of her previous sterilization. Instead, Huang was taken forcibly to be sterilized on April 24, 2000.
The Immigration Judge (IJ) found Huang not to be credible. Huang submitted a medical evaluation from a radiologist in the United States, which states that there was “no definite evidence of prior vasectomy,” but that “sequela [sic] of this procedure may not be sonographically evident.” A.R. 282.[1] The IJ noted that “[a]ny doubt raised in this evaluation was not rebutted by respondent’s [sic] through another medical examination.” IJ's decision, at A.R. 52. The IJ also found that Huang’s description of his vasectomy was not consistent with information in the Merck Manual of Medical Information. According to the IJ, Huang testified that “the underside of his penis was cut, which contradicted Merck’s description of vasectomy is evolving [sic] a cut in the scrotum.” A.R. 52. The IJ also faulted Huang for failing to have authenticated the sterilization certificate he submitted. The IJ also noted that Huang failed to provide any corroboration for his allegation that his wife was sterilized in 1991 or that her sterilization was reversed in 2004. A.R. 52-53. The IJ noted that information in the Merck Manual indicating that female sterilization may be reversed was not sufficient to corroborate Huang’s contention that his wife’s sterilization had been reversed. Id.
The Board of Immigration Appeals (BIA) found “no clear error” in the IJ’s adverse credibility finding. The BIA found no error in the IJ’s use of the Merck Manual, noting that an agency can take official or administrative notice of commonly acknowledged facts. A.R. 2. The BIA found that the questions the IJ asked Huang about his vasectomy were proper generalized questions, and were not “questions that only a medical professional could answer,” as Huang had argued on appeal. A.R. 3. Although recognizing that a vasectomy can in rare cases spontaneously reverse, the BIA also found that Huang’s positive sperm count, with no evidence that he had a surgical reversal of the vasectomy, undercut his claim. Id. The BIA found that Huang had submitted insufficient corroboration to overcome his incredible testimony. A.R. 4. Huang filed a timely petition for review.
II.
We review the final order of the BIA, but to the extent that the BIA adopts parts of the IJ’s opinion, we review the IJ’s opinion to determine whether the BIA’s decision to defer to the IJ was appropriate. Zhang v. Gonzales, 405 F.3d 150, 155 (3d Cir.2005). “We will uphold the [adverse credibility] findings ... to the extent that they are supported by reasonable, substantial and probative evidence on *859 the record considered as a whole, and will reverse those findings only if there is evidence so compelling that no reasonable factfinder could conclude as the [IJ] did.” Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir.2003).[2]
We agree with the BIA that the discrepancies between Huang’s description of his vasectomy, and information the IJ found in the Merck Manual, coupled with the doctor’s report finding no evidence of a prior vasectomy, and the report of Huang’s positive sperm count, “were a sufficient basis for the [IJ] to doubt the respondent’s credibility and the entirety of his asylum claim.” A.R.3.[3] We recognize that there appear to have been some problems with translation at the hearing, and that Huang’s testimony (that he was cut “a little bit under the penis” — not, as the IJ said “on the underside of the penis”) was not necessarily inconsistent with information in the Merck Manual that an incision for a vasectomy would be made in the scrotum. Nevertheless, Huang did not sufficiently rebut the implications of the medical reports he submitted; ie., that he may never have had a vasectomy. Although Huang complains in his brief that the IJ relied on information in the Merck Manual regarding how a vasectomy is performed,[4] he also cites the Merck Manual for the proposition that a vasectomy can be reversed spontaneously. Petitioner’s Brief at 8. However, as the BIA noted in its decision, such a reversal occurs “in less than 1 percent of vasectomies....” A.R. 3. Huang submitted no medical testimony or evidence that a reversal happened in his case.[5] We do not find the evidence so compelling that a reasonable factfinder would have to conclude that Huang in fact underwent a forced vasectomy.
Because the BIA in this case properly deferred to the IJ’s adverse credibility finding, we will deny the petition for review.

. Another doctor's report submitted noted that Huang's semen had been sent to a laboralory for analysis, "and the result showed positive sperm cells count.” A.R. 283.

. This case is governed by the provisions of the Real ID Act of 2005 regarding review of adverse credibility findings, as Huang’s asylum application was filed after the effective date of the Act. See Real ID Act of 2005, Pub.L. No. 109-13, Div. B, § 101, 119 Stat. 231 (May 11, 2005). The new provisions, inter alia, purport to eliminate a requirement that an adverse credibility finding based on an inaccuracy or inconsistency involve the heart of the applicant's claim. See Lin v. Mukasey, 521 F.3d 22, 27-28 (1st Cir.2008). We need not consider the effects of the new provisions, as the inconsistencies cited by the IJ here clearly involve the heart of Huang’s claim.

. As the Government notes in its brief, Huang has not rebutted any of the BIA's findings on appeal, but has instead reiterated, without change, the arguments from his brief to the BIA.

. The Government notes, however, that at the hearing before the IJ, Huang withdrew his objection to admission of the Merck Manual excerpt. A.R. 97.

. Although one medical report Huang submitted noted that the sequelae of a vasectomy might not be sonographically evident, Huang submitted no evidence as to the likelihood that no scar would be visible in a doctor’s physical examination. Common sense dictates that it is possible that a small incision might heal without obvious evidence of a scar, but again, Huang did not provide evidence showing how common this is in the case of a vasectomy, nor how common it would be for an individual to have both an absence of scarring and a positive sperm count following a vasectomy. The contents of the medical reports Huang submitted certainly should have alerted him that the medical evidence in support of his claim was weak.