**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1120
_____

LI JIAO CHEN,
                                        Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A200-035-975)
Immigration Judge:  Honorable R.K. Malloy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 3, 2010
Before:  SLOVITER, CHAGARES, and WEIS, Circuit Judges
Opinion filed: November  24, 2010
_____

OPINION
_____

PER CURIAM.

Petitioner Li Jiao Chen seeks review of a decision by the Board of

Immigration Appeals ("BIA" or the "Board) dismissing her appeal from an Immigration

Judge's ("IJ") denial of her applications for asylum, withholding of removal, and

protection under the Convention Against Torture ("CAT").  For the following reasons,

1

the petition for review will be denied.

## I.

Li Jiao Chen entered the United States in 2006 and was charged with removability under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), for entering the United States without being admitted or paroled. Chen admitted the charges and conceded removability before an Immigration Judge ("IJ"), but filed applications for asylum, withholding of removal, and CAT protection on the basis that she experienced persecution in China because she attended an unofficial Catholic Church, and fears future persecution on the basis of her religion and political opinion.

At her immigration hearing, Chen testified that after graduating from junior high school, her parents arranged for her to marry the son of a wealthy family, whom she refused to wed because she believed he was mentally disabled. Because of her refusal, the boy's family demanded a payment of 100,000 RMB from her family for "damages." Her family was too poor to pay the fine, so Chen took a job on an assembly line to help pay the debt. Chen testified that she was depressed from working overtime in the factory, until she was introduced to Catholicism by a co-worker who took her to an underground church. She attended sporadically at first, due to her work schedule, but began attending more regularly in 2004. Chen testified that members of the congregation were in the process of constructing a church, but in October 2004, the Chinese government destroyed the church because it was not registered. On Christmas Eve in 2005, Chen and other church members were gathered for a service at a private home when police officers

2

arrived, surrounded them, and captured the head priest. In the ensuing chaos, Chen escaped arrest and fled to her aunt's home in a nearby village. She phoned her mother at home the next day and learned that the police had been there looking for her. The officials gave Chen's mother a committee notification card and threatened her that she should have Chen surrender or risk punishment. Chen's mother told Chen not to return home, so she made arrangements to come to the United States. Chen testified that she continues to attend services regularly at a Chinese-language church in Philadelphia, and was baptized as a Catholic in New York in April 2007. Chen fears that if she returned to China, she would be jailed and persecuted for attending unauthorized Catholic activities and lose the freedom of practicing her beliefs. In support of her claim, Chen submitted a certificate of membership from her Church in China, a letter from her mother, a letter from her co-worker, a copy of the committee notification card, and photographs of the demolished church.

In May 2008, the IJ found that Chen provided credible testimony that she is currently a practicing Catholic, but that her testimony with respect to her claim regarding her religious practices in China was incredible and implausible.[1] The IJ also found that to the extent Chen's current religious practice gave rise to a claim for fear of future persecution, this fear was too speculative given the existence of government sanctioned

---

[1] The IJ also noted that the incidents Chen described did not rise to the level of persecution, but the BIA did not affirm the IJ's decision on this basis.

Catholic churches in China. The IJ also found that Chen failed to establish that anyone would be interested in torturing her for any reason upon her return to China. The IJ therefore denied Chen's applications for asylum, withholding of removal, and protection under the CAT, and ordered her removed to China. In December 2009, the BIA affirmed the IJ's adverse credibility determination and dismissed Chen's appeal. This petition for review followed.

## II.

We have jurisdiction under 8 U.S.C. § 1252(a) to review final orders of removal issued by the BIA. Where, as here, the BIA has based its decision on the IJ's adverse credibility analysis, we may review both opinions of the BIA and the IJ. Thu v. Att'y Gen., 510 F.3d 405, 412 (3d Cir. 2007). We review agency factual determinations, including adverse credibility determinations, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see Lin v. Att'y Gen., 543 F.3d 114, 119 (3d Cir. 2008). Because Chen filed her asylum application after May 11, 2005, the provisions of the REAL ID Act governing credibility determinations in asylum applications apply. See Chukwu v. Att'y Gen., 484 F.3d 185, 189 (3d Cir. 2007). Under the REAL ID Act, a trier of fact may base a credibility determination on inconsistencies, inherent implausibilities, inaccuracies, and other factors, without regard to whether they relate to the heart of an applicant's claim. See 8 U.S.C. § 1158(b)(1)(B)(iii). Although adverse credibility determinations cannot be based on speculation or conjecture, "such a

4

finding will be afforded substantial deference where it is grounded in evidence in the record and where the IJ provides specific, cogent reasons for her determination." Adbulrahamn v. Ashcroft, 330 F.3d 587, 597 (3d Cir. 2003).

**III.**

On appeal, Chen argues that the agency's adverse credibility determination relies on discrepancies which do not exist or are not cogent, and reflects a failure to consider the totality of the circumstances. Additionally, Chen argues that the IJ's implausibility finding is impermissibly speculative. We disagree. Our review of the record leads us to conclude that substantial evidence supports the adverse credibility findings.

The IJ found Chen's testimony regarding her current religious practice to be credible, but did not believe that Chen had been a member of an unofficial Catholic church while living in China. The IJ was skeptical of Chen's church membership because she testified that there were no registered Catholic churches in China, a statement that is at odds with the 2005 and 2007 Department of State Reports on International Religious Freedom, which report that there are thousands of government-approved Catholic churches and meetinghouses in China. AR 408. In particular, the IJ found it noteworthy that after the death of Pope John Paul II, Catholic churches were encouraged by the Chinese government to hold mass, and it was reported that tens of thousands of Chinese across the country took part. Based on these reports, the IJ concluded that, "[i]t would seem that anyone affiliated in any way with the Catholic church in China would

5

have been aware of the . . . recognition of the death of Pope John Paul II, and therefore would be aware that there is something known as the official Catholic Church of China." AR 124.

Chen argues that the IJ's conclusion that any Catholic in China would be aware of the existence of registered churches was impermissibly speculative and did not take into account the totality of the circumstances presented in this case, which include Chen's limited education and recent conversion to Catholicism. See Shrestha v. Holder, 590 F.3d 1034, 1041 (9th Cir. 2010) ("Credibility determinations under the REAL ID Act must . . . 'be "reasonable" and "take into consideration the individual circumstances" of the applicant.'") (quoting Lin v. Mukasey, 521 F.3d 22, 28 n.3 (1st Cir. 2008)).

Even if this aspect of the IJ's determination is discounted, this was not the sole basis for the IJ's adverse credibility determination, and there is substantial evidence to support the IJ's and BIA's findings on the record as a whole. The IJ found it noteworthy that the letter submitted by Chen's church in China did not mention the destruction of their church building or the problems that Chen and other church members endured. Although Chen explained that she had only asked the Church to send proof that she was a member, it is reasonable for the IJ to question why, given that Chen was able to obtain a statement from the Church, the statement failed to mention these significant events.

The IJ also found it significant that the letter from Chen's mother did not provide more details about the destroyed church, particularly because, according to

Chen's testimony, she was the one who had taken the pictures of the structure that were provided to the court. AR 129-30. This observation is supported by the record. Chen's mother wrote that the church was "blasted down by the government," but made no further mention of the ruined building, the circumstances of its destruction, or her having seen and documented the debris. AR 317. The IJ also questioned the authenticity of the four photographs Chen submitted of the damaged building from different angles. AR 285-86. The IJ was concerned that there was no information regarding the type of church, the location of the church, the name of the church, when or how it was destroyed, or by whom. Although the IJ cannot reasonably fault Chen for the fact that the demolished building does not resemble the IJ's idea of what a Catholic church in China would look like, AR 130, the absence of corroborating details about the church in the statements from the Church and Chen's mother support the IJ's decision to discredit this evidence.

While we agree with Chen that not all of the IJ's individual findings as to credibility were supported by cogent reasons or substantial evidence,[2] that is not the standard applicable here. An IJ "may rely on any inconsistency or omission in making an adverse credibility determination as long as the totality of the circumstances establishes that an asylum applicant is not credible." Lin v. Mukasey, 534 F.3d 162, 167 (2d Cir. 2008); 8 U.S.C. § 1158(b)(1)(B)(iii). Here, the IJ relied on Chen's lack of knowledge

---

[2] For example, the IJ herself acknowledged that her conclusion that the Chinese government would not have allowed the construction of the church to advance to completion if the builders did not have a permit to build a church, could be characterized as "speculative or conjecture." AR 130.

about the existence of registered Catholic churches in China, omissions in the statements from her Church and her mother regarding significant aspects of her testimony, and a failure to provide credible corroborative evidence. There is substantial evidence in the record to support the IJ's and BIA's finding that the respondent lacked credibility on the record considered as a whole, and we cannot find that "any reasonable adjudicator would be compelled to conclude to the contrary." Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002) (internal quotations and citations omitted).

Although the BIA relied exclusively on the IJ's adverse credibility determination in denying Chen's claims for asylum and withholding of removal, the BIA denied Chen's claim for protection under the CAT on the merits. We agree with the BIA's conclusion that Chen has not established a basis for relief under the CAT, as she did not demonstrate that it is more likely than not that she would be tortured upon her return to China. See Tarrawally v. Ashcroft, 338 F.3d 180, 187-88 (3d Cir. 2003); 8 C.F.R. § 1208.16(c)(2).

## IV.

Accordingly, we will deny the petition for review.