**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3112
_____

LI JIAO CHEN, a/k/a LIJIAO CHEN,
                                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A200-035-975)
Immigration Judge:  Honorable R.K. Malloy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 24, 2013
Before:  FUENTES, HARDIMAN and VAN ANTWERPEN, Circuit Judges

(Opinion filed: April 25, 2013)
_____

OPINION
_____

PER CURIAM

        Li Jiao Chen, a native and citizen of China, petitions for review of an order from

the Board of Immigration Appeals ("BIA") denying her motion to reopen.  For the

following reasons, we will deny the petition for review.

Chen entered the United States without inspection in 2006, and removal proceedings started shortly thereafter. Chen conceded her removability and applied for asylum and related relief on the basis of past persecution for her Catholic faith and a fear of future persecution on the same grounds. The immigration judge denied relief, finding that Chen was not credible insofar as she claimed to have been a practicing Catholic in China and that any fear of persecution based on her current faith was too speculative. The BIA affirmed, and this Court denied Chen's petition for review. Chen v. Att'y Gen., 401 F. App'x 680, 684 (3d Cir. 2010).

In 2011, Chen filed a motion to reopen proceedings, arguing that she now has two U.S.-born children and fears returning to China due to an alleged increase in the enforcement of its population control policy in her native Fujian Province. Chen maintained that if she returned to China she would be forced to undergo sterilization and would be fined and imprisoned. The BIA denied the motion, concluding that the changed country conditions exception to the time limit for motions to reopen did not apply. It held that administrative punishments were typically used to enforce the population control policy. The BIA also held that Chen had not provided sufficient evidence to show that she would be sterilized on account of her U.S.-born children. In doing so, the BIA rejected much of Chen's voluminous evidence because it was not authenticated, was not from a geographic area applicable to her, or was not from similarly situated individuals, i.e., individuals with U.S.-born children. The BIA also concluded that evidence that there had been incidents of coercion to meet birth quotas, "contrary to the

national policy," was not sufficient to establish that Chen would be sterilized against her will. Administrative Record ("A.R.") at 5. This petition for review followed.

We have jurisdiction pursuant to 8 U.S.C. § 1252. We review the BIA's denial of a motion to reopen for abuse of discretion. Pllumi v. Att'y Gen., 642 F.3d 155, 158 (3d Cir. 2011). Such review is highly deferential, and the BIA's decision will not be disturbed unless it is "'arbitrary, irrational, or contrary to law.'" Id. at 158 (quoting Filja v. Gonzales, 447 F.3d 241, 251 (3d Cir. 2006)). As a general rule, an alien may file only one motion to reopen and must do so within ninety days of the date of the final administrative decision. 8 C.F.R § 1003.2(c)(2). These limitations do not apply, however, to motions that rely on "changed circumstances arising in the country of nationality . . . if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii).

After careful review of the record, we are satisfied that the BIA did not abuse its discretion. Chen had to provide evidence of changed country conditions in order for her untimely motion to proceed. She claimed that enforcement of the one-child policy in Fujian Province had increased and that she would be sterilized against her will because her U.S.-born children would be counted under the policy. The BIA relied in part on the State Department's 2007 Profile of Asylum Claims and Country Conditions for China ("2007 Profile") to determine that administrative punishments are the officially-sanctioned mode of enforcement for the one-child policy, see A.R. at 267-68, and that there is no official policy mandating sterilization of parents of children born outside of

3

China. Indeed, the 2007 Profile states that "U.S. officials in China are not aware of the alleged official policy, at the national or provincial levels, mandating the sterilization of one partner of couples that have given birth to two children, at least one of whom was born abroad." A.R. at 274. The BIA was entitled to accord evidentiary weight to the 2007 Profile.[1] See Zubeda v. Ashcroft, 333 F.3d 463, 478 (3d Cir. 2003) (noting that State Department reports are often the "most appropriate and perhaps the best resource for information on political situations in foreign nations") (quotation marks omitted).

The BIA also cited Matter of H-L-H & Z-Y-Z-, 25 I. & N. Dec. 209 (BIA 2010), in support of its determination that Chen had not presented evidence sufficient to warrant reopening. In that decision, the BIA rejected a similar claim regarding forced sterilization in Fujian Province on account of U.S.-born children by relying on the 2007 Profile. We have described Matter of H-L-H & Z-Y-Z as "comprehensive" and "persuasive[]," Ying Chen v. Attorney General, 676 F.3d 112, 114 (3d Cir. 2011), and have noted its conclusion that "physical coercion to achieve compliance with family planning goals is uncommon and unsanctioned by China's national laws and . . . the overall policy is much more heavily reliant on incentives and economic penalties." Id. at 115 (quotation marks omitted).

---

[1] Chen does not challenge the reliability of the 2007 Profile in her appellate brief. Consequently, she has waived review of the issue. See Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193, 202-03 (3d Cir. 2004).

Against the weight of this authority, Chen argues that the BIA made a "perfunctory" finding when it determined that administrative punishments are typically used for enforcement because two of the documents the BIA cited, the 2009 and 2010 Annual Reports of the Congressional-Executive Commission on China, note that forced sterilization is employed as an enforcement measure. Pet'r's Br. at 30-31. The BIA, however, acknowledged in another part of its decision that there was evidence of some incidents of coercion, but concluded that it was insufficient to establish that Chen would suffer similar treatment. A.R. at 5. The Annual Reports also appear to concern only women who gave birth to children in China and thus do not support Chen's claim regarding U.S.-born children.

Chen also claims that the BIA arbitrarily dismissed most of her evidence. We disagree. The BIA rejected documents from China because they were not authenticated pursuant to 8 C.F.R. § 1287.6, or in any other manner. Chen contends that some of the documents are from Chinese government web sites and thus are self-authenticating under Federal Rule of Evidence 902(5). The Federal Rules of Evidence, however, do not apply in asylum proceedings. See Ezeagwuna v. Ashcroft, 325 F.3d 396, 405 (3d Cir. 2003). Because no other means of proving authenticity was attempted for the documents from Chinese government web sites, we cannot say that the BIA abused its discretion by requiring authentication. Cf. Ying Chen, 676 F.3d at 117. Chen claims that four other documents were authenticated by the affidavit of an expert. Although the BIA did not explicitly comment on the affidavit, we note that three of the four documents concern

locales not relevant to Chen, see A.R. at 534-62, a reason the BIA explicitly gave for

discounting certain evidence.[2] A.R. at 5.

The BIA noted that Chen is from "Luding Village, Shanggang Township, Changle

City." A.R. at 5. Chen argues that her last place of residence in China was Fengshan

Village, Jinfeng Township, Changle City, and that documents from that locale should

apply to her, as well as any documents from Changle City or Fujian Province as a whole.

Pet'r's Br. at 28-29. She fails, however, to explain how documents concerning policies

apparently restricted to geographic areas other than where she formerly resided would

apply to her. We therefore cannot say that the BIA erred in finding those documents

inapplicable to her claim.[3]

Finally, Chen challenges the BIA's conclusions regarding two pieces of

individualized evidence: a letter from a cousin who claims she was forcibly sterilized in

Changle City, and a document obtained by Chen's mother-in-law from the Fengshan

Villagers' Committee stating that Chen must immediately report for sterilization upon her

return to China. The BIA appropriately concluded that the letter was not relevant

---

[2] The fourth document does not appear to support Chen's claim. It describes an effort to achieve family planning targets in Changle City from December 2008 through February 2009. While it mentions achieving sterilization targets, it does not mention procuring involuntary sterilizations. A.R. at 521-24.

[3] We note that Chen submitted five documents that may be broadly construed as applying to Changle City as a whole, and three documents from Jinfeng Township, her last place of residence. A.R. at 476-528, 636-669, 675-682. Although Chen's counsel apparently wrote to government officials seeking authentication of these documents, which the BIA acknowledged, the documents ultimately were not authenticated.

because Chen and her cousin are not similarly situated, i.e., the cousin's children were born in China, not the United States. The BIA questioned the document from the Fengshan Villagers' Committee because it was handwritten, unsigned, and not authenticated. A.R. at 5. Chen argues that the document "bears indicia of authenticity" in the form of an official stamp and that its "chain of custody" is established by her mother-in-law's letter. Pet'r's Br. at 25-26. Chen, however, has failed to persuasively explain why the stamp, which is nearly illegible, should suffice to authenticate the document in light of the BIA's other concerns. Accordingly, we cannot conclude that the BIA abused its discretion by discounting the document. See Matter of H-L-H- & Z-Y-Z-, 25 I. & N. Dec. at 214 (giving less weight to documents which were obtained for purposes of the hearing, were unsigned, or failed to identify the author).

For these reasons, we will deny the petition for review.