# United States Court of Appeals
## For the First Circuit

No. 23-1412

MARIANO ORTIZ TREJO,

Petitioner,

v.

PAMELA BONDI,
Attorney General,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Montecalvo, Lipez, and Aframe, Circuit Judges.

Randy Olen for petitioner.

Todd J. Cochran, Senior Trial Attorney, U.S. Department of
Justice, Civil Division, with whom Daniel E. Goldman, Senior
Litigation Counsel, Office of Immigration Litigation, and Brett A.
Shumate, Acting Assistant Attorney General, Civil Division, were
on brief, for respondent.

August 29, 2025

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2),
Attorney General Pamela Bondi is automatically substituted for
former Attorney General Merrick B. Garland as respondent.

**LIPEZ**, **Circuit Judge**. Mariano Ortiz Trejo, a native and citizen of Mexico, petitions for review of the denial of his application for cancellation of removal under section 240A(b)(1) of the Immigration and Nationality Act ("INA") (codified at 8 U.S.C. § 1229b(b)(1)). He contends that he is entitled to this relief because if he were removed to Mexico, his minor son would suffer "exceptional and extremely unusual hardship," 8 U.S.C. § 1229b(b)(1)(D), and he argues that the Board of Immigration Appeals ("BIA") legally erred in determining otherwise. Because we discern no error in the BIA's decision, we deny the petition.

## I.

Ortiz Trejo entered the United States without inspection in 1999.[1] After briefly returning to Mexico in 2004 to care for his ailing parents, Ortiz Trejo reentered the United States without inspection in 2005 and has not left the country since that time. Ortiz Trejo lives with his son, J.O. -- a United States citizen -- and J.O.'s mother in Rhode Island.[2] To support his family, Ortiz Trejo works at a construction company in Massachusetts, which allows him to contribute about $1,400 per month to his household's monthly expenses of $2,000. J.O.'s

---

[1] We draw the relevant facts from the administrative record, including testimony from Ortiz Trejo, whom the Immigration Judge ("IJ") found credible.

[2] J.O.'s mother has a permit to work in the United States but is not a legal permanent resident.

mother, who works at a pizza restaurant, contributes the remaining $600 per month.

In July 2015, Ortiz Trejo was served a Notice to Appear charging him with being subject to removal under the INA. In response, he conceded removability and applied for cancellation of removal, arguing that his removal to Mexico would cause exceptional and extremely unusual hardship to his minor son. He also applied for voluntary departure in the alternative.

At the November 2018 hearing on the merits of his applications,[3] Ortiz Trejo testified that J.O., who was eight years old at the time, would fare poorly if his father were removed to Mexico.[4] Ortiz Trejo explained that he and J.O. are very close,

---

[3] During this hearing, Ortiz Trejo stated that he would not be moving forward with an application for asylum and withholding of removal that he had filed in February 2012 and thus was seeking only cancellation of removal and, alternatively, voluntary departure.

[4] In a written declaration in support of his cancellation application submitted to the IJ at the start of the merits hearing, Ortiz Trejo stated that J.O. would accompany him if he were removed to Mexico. However, Ortiz Trejo had previously asserted in his cancellation application that if he were ordered removed, J.O. would continue to live in the United States. He did not clarify during his testimony before the IJ which of those statements was accurate. Given that J.O. lives with his mother, who is not in removal proceedings, the BIA stated that it was "assum[ing] that [J.O.] will remain in this country" upon Ortiz Trejo's removal. See In re Calderon-Hernandez, 25 I. & N. Dec. 885, 886 (BIA 2012) ("Where both parents are living in the United States and the parent who is in [removal] proceedings indicates an intention that a child will remain in the United States upon his or her removal, . . . [i]t is reasonable . . . to assume that the child will be cared for and supported by the parent who remains here . . . ."). Ortiz Trejo does not argue that this assumption was erroneous, so we

noting that he "take[s] [J.O.] to karate, to the park, to school, to games, and at all times [J.O. is] always looking for [him]." Ortiz Trejo testified that if he were removed, "it would be very difficult . . . to provide" J.O. with the quality of life to which he was accustomed. For example, Ortiz Trejo estimated that, in Mexico, he would make roughly fifty dollars per week and thus would not "earn enough to be able to contribute" to his family's expenses.

Much of Ortiz Trejo's testimony focused on his son's physical health challenges. He attested that his "son has a medical problem with his allergies" and, specifically, is allergic to "[p]ollen, mold, hot water,[5] and whatever is green." When he was four years old, J.O. experienced an "[a]naphylactic reaction" that required a visit to the emergency room. After that episode, Ortiz Trejo and J.O.'s mother began taking J.O. to the doctor every week or so for allergy shots and were continuing to do so as of the date of the hearing. Progress notes from these visits with his doctor reflected that J.O. "[f]eels [his allergy shots] have been very ben[e]ficial" and "reports good control of [his] allergies." J.O. was also given an EpiPen following his allergic

---

will likewise assume that J.O. will not accompany his father to Mexico.

[5] Ortiz Trejo explained that his son breaks out in welts and experiences shortness of breath if his shower water is too hot.

reaction to use in case of emergency, and he was prescribed allergy medication to take daily. J.O.'s allergy treatments and medication are paid for by his Rhode Island-sponsored health insurance.

Before his testimony began, in support of his applications, Ortiz Trejo asked the IJ to admit as evidence various documents, including a written evaluation of J.O. completed in August 2018 by a licensed psychologist. That evaluation diagnosed J.O. with "Adjustment Disorder Unspecified" and "[p]roblems" related to his father's immigration proceedings. The evaluation also noted, among other things, that J.O. "has demonstrated irritability in response to his father's potential deportation" and that Ortiz Trejo's removal "would result in a significant loss for" J.O. The government objected to the admission of the psychological evaluation, arguing that it was "unreliable, full of speculation," and "comments on matters that are outside of the expertise of a psychologist." Finding the evaluation potentially "probative," the IJ admitted it into evidence but noted that, in light of the subsequent testimony, he would "give [the evaluation] whatever weight [he] deems appropriate." Ortiz Trejo did not mention the evaluation during his subsequent testimony, nor did he comment on his son's mental health generally.

Following the close of evidence, the IJ determined that Ortiz Trejo had not established that J.O. would experience "exceptional and extremely unusual hardship" due to his father's

removal.  In reaching that conclusion, the IJ found "the likelihood that [J.O] would have [another] allergic reaction requiring an emergency room visit" to be "extremely low" and that J.O. suffers from "essentially seasonal allergies" that "are controllable." The IJ further found that J.O.'s "mother works and earns money to be able to provide for" J.O. and that J.O. "would still receive treatment for his allergies from the state of Rhode Island" if his father were removed.  The IJ therefore denied Ortiz Trejo's application for cancellation of removal.  The IJ also determined, however, that Ortiz Trejo had "met the statutory obligations for voluntary departure" outlined in 8 U.S.C. § 1229c(b) and thus granted him voluntary departure "in lieu of removal."

Ortiz Trejo appealed to the BIA, which affirmed the IJ's denial of cancellation of removal and grant of voluntary departure.[6]  The BIA concluded that the IJ "properly considered the relevant hardships in the aggregate" and "appropriately evaluated the health of [Ortiz Trejo's] son."  Responding directly to Ortiz Trejo's argument that the IJ had "failed to consider" the August 2018 psychological evaluation of J.O., the BIA noted that the IJ had "state[d] that he evaluated all evidence of record." Then, after noting that the evaluation "states that [J.O.] has

_____

[6] Ortiz Trejo also asked the BIA to remand his case to the IJ so he could submit additional evidence on his cancellation application, and the BIA denied that motion.  Ortiz Trejo does not appeal this denial, so we do not address it further.

- 6 -

'Adjustment Disorder, Unspecified' and 'problems' related to [Ortiz Trejo's] immigration circumstances," the BIA concluded that Ortiz Trejo "has not shown the [IJ] overlooked evidence of a medical condition affecting his son that establishes [that J.O.] would experience exceptional and extremely unusual hardship upon [Ortiz Trejo's] removal." Ortiz Trejo timely sought our review.[7]

## II.

### A. Scope of Review

"Because the BIA affirmed the IJ's decision after determining that the IJ's findings and conclusions were not erroneous -- rather than expressly adopting the IJ's reasoning -- 'we focus our review on the BIA's decision.'" Contreras v. Bondi, 134 F.4th 12, 18 (1st Cir. 2025) (quoting Aguilar-Escoto v. Garland, 59 F.4th 510, 515 (1st Cir. 2023)).

To be eligible for cancellation of removal, Ortiz Trejo must establish, among other things, that his "removal would result in exceptional and extremely unusual hardship to [his] spouse, parent, or child, who is a citizen" or lawful permanent resident "of the United States." 8 U.S.C. § 1229b(b)(1)(D).[8] "'[T]he

_____

[7] We subsequently granted Ortiz Trejo's unopposed motion to hold his petition in abeyance pending the Supreme Court's decision in Wilkinson v. Garland, 601 U.S. 209 (2024).

[8] A noncitizen seeking cancellation of removal also must "ha[ve] been physically present in the United States for a continuous period of not less than 10 years immediately" before applying for that relief, be "a person of good moral character

- 7 -

application of the exceptional and extremely unusual hardship standard to a given set of facts' is a mixed question of law and fact . . . ." Contreras, 134 F.4th at 19 (quoting Wilkinson v. Garland, 601 U.S. 209, 217 (2024)). We have jurisdiction to consider this mixed question as "a question of law under § 1252(a)(2)(D)." Wilkinson, 601 U.S. at 217; see Guerrero-Lasprilla v. Barr, 589 U.S. 221, 228 (2020) (holding that a "mixed question of law and fact" constitutes "a 'questio[n] of law' within the meaning of § 1252(a)(2)(D)" (alteration in original)). Our review of the BIA's hardship determination must be "deferential." Wilkinson, 601 U.S. at 225.[9]

We also may consider a petitioner's claim that the BIA's decision "turns a blind eye to salient facts or completely overlooks critical evidence." Contreras, 134 F.4th at 20 (citation modified). A failure to consider key evidence is an error of law that we review de novo. Id.; Alay v. Bondi, 145 F.4th 1, 6 (1st Cir. 2025). We do not, however, have jurisdiction to review the IJ's findings of fact. Patel v. Garland, 596 U.S. 328, 347 (2022)

---

during such period," and "not been convicted" of specified crimes. 8 U.S.C. § 1229b(b)(1)(A)-(C).

[9] The level of deference owed remains an "open question" in this circuit. Nolasco v. Bondi, 134 F.4th 677, 682 (1st Cir. 2025). We need not answer that question now, however, because we reach the same conclusion regardless of whether we apply the highly deferential substantial evidence standard, as the government urges, or the abuse of discretion standard that Ortiz Trejo appears to advance. See id. (taking same approach).

("Federal courts lack jurisdiction to review facts found as part of discretionary-relief proceedings . . . .").

**B. Discussion**

Ortiz Trejo advances two arguments on appeal. He asserts that the BIA "[i]gnored" key record evidence,[10] and he also contends that the BIA's conclusion that J.O. would not suffer exceptional and extremely unusual hardship due to his father's removal was erroneous, primarily taking aim at the IJ's factual findings that the BIA "merely ratified." We address each argument in turn.

### 1. Whether the BIA Ignored Key Record Evidence

Ortiz Trejo claims that the BIA committed legal error because it ignored salient record evidence -- namely, the psychological evaluation of J.O. -- in reviewing for clear error the IJ's findings of fact on J.O.'s health conditions. In support, Ortiz Trejo relies on our recent decision in Contreras.[11] There, we concluded that the BIA erred as a matter of law by ignoring in its review of the IJ's factual findings a report, also not

_____

[10] Because our review is focused on the BIA's decision, "[w]e construe the parties' arguments with respect to the 'agency' -- i.e., the BIA and IJ together -- as instead concerning only the BIA." Contreras, 134 F.4th at 18 n.5.

[11] Ortiz Trejo filed his opening brief in October 2024, and Contreras was decided in April 2025. See 134 F.4th at 12. The day before oral argument, Ortiz Trejo submitted a citation of supplemental authorities pursuant to Federal Rule of Appellate Procedure 28(j), asserting that this case is "controlled" by Contreras. Ortiz Trejo then reiterated that assertion during oral argument.

- 9 -

mentioned by the IJ in making those findings, that detailed the ongoing psychological harms suffered by the petitioners' minor son due to sexual abuse that he experienced as a young child. 134 F.4th at 22-23. Ortiz Trejo's reliance is misplaced, however, because, despite superficial similarities, this case differs substantially from Contreras.

In Contreras, we explained that "while the BIA need not discuss every piece of evidence offered, it is not free to disregard important evidence in the record." Id. at 21 (citation modified). However, "[w]hen the BIA's decision is neither inconsistent with [the evidence at issue] nor gives reason to believe the BIA was unaware of it, we have no reason to doubt that the agency considered the evidence." Domingo-Mendez v. Garland, 47 F.4th 51, 58 (1st Cir. 2022) (second alteration in original) (quoting Lin v. Mukasey, 521 F.3d 22, 28 (1st Cir. 2008)). Our holding in Contreras was grounded in the fact that the BIA's conclusion upon reviewing the IJ's factfinding was "facially inconsistent with" the psychological report that detailed the aftermath of the abuse that the petitioners' son suffered. 134 F.4th at 22. That report, completed by a licensed mental health counselor, noted that the abuse had never been treated with "the necessary importance," stated that the petitioners' son was continuing to suffer "significant distress and impairment" because of that abuse, "concluded that [his] 'presentation and history are

- 10 -

consistent with Major Depression,'" and "recommended that [he] 'obtain continued psychotherapeutic services to address his depressive disorder.'" Id. at 17. Nevertheless, the BIA concluded that the petitioners' son "has never required mental health counseling, medication, or any specialized medical treatment." Id. at 22. "Because the BIA failed to explain how it reconciled its conclusion with the . . . report's contrary findings," we were "left to conclude that the BIA 'simply ignored'" them. Id. (quoting Cortes v. Garland, 105 F.4th 124, 136 (4th Cir. 2024)).

By contrast, in this case, the record does not support Ortiz Trejo's contention that the BIA "[i]gnored" the evaluation in reviewing the IJ's factfinding on J.O.'s health. There is no question that the BIA was aware of the psychological evaluation -- for example, the BIA noted that the evaluation diagnosed J.O. with "Adjustment Disorder" and "problems" related to Ortiz Trejo's "immigration circumstances." And, unlike in Contreras, where the BIA's decision was incompatible with the content of the report at issue, see 134 F.4th at 22, nothing in the BIA's decision here conflicts with the evaluation's findings and conclusions. Rather, after "[c]onsidering the [IJ's] statement that he evaluated all evidence of record" and making specific reference to the evaluation's findings, the BIA simply determined that Ortiz Trejo "has not shown" that the IJ "overlooked

- 11 -

evidence of a medical condition affecting" J.O.  In other words, we conclude that the BIA determined the evaluation's content did not render the IJ's findings on J.O.'s health clearly erroneous after it duly considered the evaluation.  Indeed, the BIA's decision gives no "reason to believe" otherwise.  Domingo-Mendez, 47 F.4th at 58 (quoting Lin, 521 F.3d at 28).

Our conclusion that the BIA considered the evaluation but nonetheless found no clear error in the IJ's factfinding is reinforced by the fact that Ortiz Trejo himself did not seem to believe his son's mental health condition was particularly salient.  Although he testified at length about his son's physical ailments, Ortiz Trejo did not once mention his son's mental health.  That fact, too, distinguishes this case from Contreras, where the petitioners "emphasized" their minor son's "mental health struggles" and testified about the sexual abuse of their son and its consequences, which were the focus of the psychological report at issue.  134 F.4th at 17.

In advancing his claim of error, Ortiz Trejo asserts that the BIA should not have relied upon the IJ's statement that he "evaluated all evidence of record" in assessing the IJ's factfinding because such statements are invoked in "[v]irtually every IJ decision."  To be sure, we agree with Ortiz Trejo that an "evaluated all evidence" statement by the IJ cannot insulate the BIA's decision from legal error.  The BIA has its own obligation

to consider the full record in reviewing the IJ's factfinding for clear error. Here, however, the BIA's determination that the IJ's factfinding was not clearly erroneous was not based solely on the IJ's "all evidence of record" statement. Rather, as explained above, the BIA's opinion provides no reason to doubt that it conducted its own evaluation of the totality of the evidence in the record.

What is more, there is every reason to believe that the IJ, too, "evaluated all evidence" before him. That is, the record here belies Ortiz Trejo's assertion that the IJ did not consider the evaluation of J.O. in making his findings of fact. Indeed, the IJ explicitly found that the evaluation could be "probative" and, in response to the government's request to give it "limited weight" because it was "unreliable [and] full of speculation," the IJ stated that he would accord the evaluation "whatever weight [he] deems appropriate." In light of the IJ's statements, the most reasonable conclusion is not that the IJ ignored or overlooked the evaluation but that, after considering the evaluation and the government's objection to it, he decided to give it "reduced weight." Accordingly, our consideration of the BIA's decision here necessarily differs from our review in Contreras, where the BIA's failure to address the report at issue was a particularly "glaring omission" because "the IJ did not even acknowledge" that report. 134 F.4th at 22. This difference, along with the ones

- 13 -

described above, refute Ortiz Trejo's contention that our reasoning in Contreras compels us to hold that the BIA legally erred in this case. Here, we cannot conclude that the BIA disregarded key record evidence in its review for clear error of the IJ's findings of fact.

## 2. Whether the BIA Misapplied the Hardship Standard

Ortiz Trejo also contends that the BIA erred in concluding, based on its de novo assessment of the hardship inquiry, that J.O.'s medical condition would not cause him to suffer exceptional and extremely unusual hardship if his father were removed to Mexico. "[T]o rise to the level of 'exceptional and extremely unusual,' the hardship to a noncitizen's qualifying relative must be 'substantially beyond that which would ordinarily be expected to result from' removal." Nolasco v. Bondi, 134 F.4th 677, 686 (1st Cir. 2025) (quoting In re Monreal-Aguinaga, 23 I. & N. Dec. 56, 56 (BIA 2001)). This standard "constitutes a high threshold," although it "is not so restrictive that only a handful of applicants . . . will qualify for relief." In re Gonzalez Recinas, 23 I. & N. Dec. 467, 470 (BIA 2002). "In determining whether the hardship standard has been met, 'consideration should be given to the age, health, and circumstances of the qualifying family members, including how a lower standard of living or adverse country conditions in the

- 14 -

country of return might affect those relatives.'" Contreras, 134 F.4th at 20-21 (quoting Gonzalez Recinas, 23 I. & N. Dec. at 468).

Although Ortiz Trejo frames his argument as a challenge to the BIA's application of the hardship standard, he primarily takes issue with the IJ's factual findings that J.O. suffers from "seasonal allergies" and is unlikely "to suffer [another] allergic reaction requiring an emergency room visit." As we noted above, however, we lack jurisdiction to review the IJ's findings of fact. See Patel, 596 U.S. at 331. We thus may consider Ortiz Trejo's argument only to the extent that he contends the facts as found by the IJ regarding J.O.'s medical condition required the BIA to conclude that Ortiz Trejo's removal would cause exceptional and extremely unusual hardship to J.O.

Properly considered, we see no merit in Ortiz Trejo's assertion of error. To reiterate, in addition to the factual findings on J.O.'s health with which Ortiz Trejo takes issue, the IJ found that J.O.'s allergies "are controllable," that J.O.'s "mother works and earns money to be able to provide for" J.O., and that if Ortiz Trejo were removed, J.O.'s "health situation . . . would not be affected" because J.O. "would still receive treatment for his allergies from the state of Rhode Island." Moreover, to the extent that Ortiz Trejo contends J.O.'s mental health should factor into the hardship calculus, the psychological evaluation reported that J.O. would experience, in essence, significant

emotional difficulty upon his father's return to Mexico.  We cannot conclude on these facts that, if Ortiz Trejo were ordered removed, J.O. would suffer hardship that is "substantially different from, or beyond, that which would normally be expected from" the removal of a close family member.  Monreal-Aguinaga, 23 I. & N. Dec. at 65; see also Nolasco, 134 F.4th at 686 (quoting the agency in observing that "emotional hardship [is] not [an] unusual consequence[] of removal").  Accordingly, Ortiz Trejo has not carried his burden to establish hardship to his son that is exceptional or extremely unusual.

### III.

For the foregoing reasons, we deny the petition for review.

So ordered.