# United States Court of Appeals
## For the First Circuit

No. 18-1590

IRMA AGUILAR-ESCOTO,

Petitioner,

v.

MERRICK B. GARLAND,
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, Chief Judge,
Howard and Kayatta, Circuit Judges.

Kenyon C. Hall, with whom Jack W. Pirozzolo, Sidley Austin, LLP, Charles G. Roth, National Immigrant Justice Center, and Carlos E. Estrada were on brief, for petitioner.
Yanal H. Yousef, Trial Attorney, Office of Immigration Litigation, with whom Joseph H. Hunt, Assistant Attorney General, Civil Division, and Anthony P. Nicastro, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.

February 7, 2023

**HOWARD**, **Circuit Judge**. For the second time, petitioner Irma Aguilar-Escoto, a native and citizen of Honduras, asks us to vacate the Board of Immigration Appeals' ("BIA" or the "Board") rejection of her claim for withholding of removal. When this case was last before us, we vacated the BIA's prior order and instructed the Board to consider the potentially significant documentary evidence submitted in support of Aguilar's claim. See Aguilar-Escoto v. Sessions, 874 F.3d 334, 335 (1st Cir. 2017). Today, we conclude that the BIA again failed to properly consider significant documentary evidence. Consequently, we vacate the Board's removal order and remand for further proceedings.

## I.

Aguilar first entered the United States in 2005. She was apprehended and removed soon thereafter, but she reentered the United States in 2009. When Aguilar was again apprehended, the Department of Homeland Security ("DHS") filed a notice of intent to reinstate her prior removal order. She applied for withholding of removal. At her merits hearing before an Immigration Judge ("IJ") in 2013, Aguilar described pervasive abuse that she endured at the hands of her ex-husband, Victor Gonzales. Aguilar alleged that this abuse occurred both during and after their marriage of several years. She testified that she fled Honduras to escape the abuse. Aguilar also submitted documentary evidence related to the abuse, including:

- A 2013 psychological evaluation report by Dr. Sarah LeVine, a United States-based clinician, that diagnosed Aguilar with Major Depressive Disorder in partial remission and Post-Traumatic Stress Disorder in remission.

- A record from the Medical Association of Honduras regarding treatment that Aguilar received from a psychiatrist in Honduras for emotional symptoms stemming from domestic violence.

- A family court order from Honduras that detailed some of the mistreatment, ordered Gonzales to stay away from Aguilar, and gave Aguilar custody of their daughters.

- Copies of three formal complaints filed with the police: One from July 13, 2004, detailing threats and harassment by Gonzales against Aguilar after the two had separated; one describing a June 14, 2008, incident in which Gonzales struck Aguilar while she was pregnant; and another from August 8, 2008, accusing Gonzales of striking Aguilar and threatening to kill her.

- A personal declaration in which Aguilar attested to long-term physical and verbal abuse.

- Two affidavits, one from Aguilar's brother and another from the brother of her then-current partner, attesting to the abuse she endured from Gonzales.

In a written decision in 2014, the IJ denied Aguilar's application for withholding of removal. The IJ found Aguilar to be not credible, citing inconsistencies between her testimony, prior interviews with immigration officials, and documentary evidence. The IJ also found that Aguilar could not overcome her lack of credibility with enough objective evidence to establish past persecution.

Aguilar appealed the IJ's decision. In January 2016, the BIA dismissed the appeal. In doing so, however, the BIA solely considered the IJ's adverse credibility ruling and failed to mention the documentary evidence related to Aguilar's abuse. Ruling that the IJ did not clearly err in its adverse credibility determination, the BIA concluded that Aguilar had failed to meet the requirements for asylum (though she was not applying for asylum). The BIA then concluded that she had similarly failed to establish eligibility for withholding of removal, because withholding of removal "has a higher burden of proof" than asylum.[1]

On appeal, this Court vacated the BIA's 2016 decision because the Board had failed to consider the documentary evidence and whether that evidence, standing on its own, was sufficient to

_____

[1] Aguilar had also applied for protection under the Convention Against Torture, which was similarly denied by the IJ and BIA. She did not challenge the denial of her CAT claim in her previous appeal or this one, and we deemed it waived. Aguilar-Escoto, 874 F.3d at 336 n.1.

support Aguilar's claim of past persecution.  See Aguilar-Escoto, 874 F.3d at 337-38.  We reasoned that, because withholding of removal requires only an objective showing rather than a subjective one, a lack of credibility is not fatal to the claim.  Id.  We therefore remanded to the BIA to consider whether the objective evidence -- absent Aguilar's discredited testimony -- was sufficient to support Aguilar's withholding petition.  Id.

In May 2018, the BIA issued a new decision in which it once again affirmed the ruling of the IJ.  This time, the BIA mentioned some of the objective evidence in its analysis, including the July 2004 and June 2008 police reports, the July 2004 family court order, the affidavits of Aguilar's brother and her partner's brother, and the letter from the Medical Association of Honduras. The BIA did not mention the August 2008 complaint, instead stating that Aguilar "provided only two complaints."  The BIA also did not mention Dr. LeVine's report and diagnosis or Aguilar's personal declaration.  After comparing the objective evidence with Aguilar's testimony, the BIA concluded that "[o]n this record" there was no "clear error in the Immigration Judge's determination that the applicant did not establish harm sufficiently severe to amount to past persecution."  The BIA also held that the IJ did not clearly err in determining that Aguilar did not show a likelihood of future persecution, including finding that she had not shown that the Honduran government is unwilling or unable to

protect her or that she would not be able to avoid harm by relocating within Honduras. Lastly, the BIA again upheld the IJ's adverse credibility determination, finding the IJ did not clearly err in that determination. This appeal followed.

## II.

"Where the BIA does not adopt the IJ's findings, we review the BIA's decision rather than the IJ's." Lin v. Mukasey, 521 F.3d 22, 26 (1st Cir. 2008) (citing Georcely v. Ashcroft, 375 F.3d 45, 49 (1st Cir. 2004)). Here, the BIA did not say that it was adopting the IJ's decision, only that the IJ's findings were not clearly erroneous. Therefore, we focus our review on the BIA's decision. See Lin, 521 F.3d at 26 (reviewing only BIA decision when BIA did not expressly adopt IJ's decision and merely said that IJ's findings were not clearly erroneous).

We review the BIA's legal conclusions de novo, "but with some deference to the agency's reasonable interpretation of statutes and regulations that fall within its sphere of authority." Jianli Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012). We review findings of fact under the "substantial evidence" standard, meaning that we will not disturb such findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Xin Qiang Liu v. Lynch, 802 F.3d 69, 74 (1st Cir. 2015) (quoting Hasan v. Holder, 673 F.3d 26, 33 (1st Cir. 2012)).

Aguilar argues that the BIA erred by failing to follow this Court's instruction to independently consider on remand the documentary evidence and to determine whether that evidence sufficed to establish past persecution.  We review de novo whether the BIA's decision comports with this Court's remand order. Sullivan v. Hudson, 490 U.S. 877, 886 (1989) ("Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error . . . .").  Under this standard, we agree with Aguilar that the BIA failed to comply with our order to "address whether, setting Aguilar's testimony to one side, the documentary evidence entitled her to relief." Aguilar-Escoto, 874 F.3d at 337.

As we noted in our prior decision in this case, "while the BIA need not 'discuss every piece of evidence offered,' it is 'required to consider all relevant evidence in the record.'" Aguilar-Escoto, 874 F.3d at 337 (emphasis in original) (quoting Lin, 521 F.3d at 28).  "When the BIA's decision is neither inconsistent with [the evidence at issue] nor gives reason to believe the BIA was unaware of it, we have no reason to doubt that the agency considered the evidence."  Domingo-Mendez v. Garland, 47 F.4th 51, 58 (1st Cir. 2022) (alteration in original) (quoting Lin, 521 F.3d at 28).  However, "it cannot turn a blind eye to salient facts" and "must fairly appraise the record." Sihotang v. Sessions, 900 F.3d 46, 51 (1st Cir. 2018).

Here, the BIA's decision gives strong reason to believe the BIA turned a blind eye to key relevant evidence. In its decision, the BIA wrote that "the applicant provided only two complaints, one dated July 13, 2004, and the other, June 14, 2008" (emphasis added). The record, however, contains a third complaint from August 8, 2008, which details that Gonzales was being investigated because there was evidence that he had struck Aguilar and threatened to kill her. The BIA's reference to "only two complaints" strongly suggests it overlooked this third complaint, and the government itself concedes the BIA "erred" in its statement that there were only two complaints and "failed to address" the August 2008 complaint.

This third complaint -- containing evidence of death threats and physical violence -- is highly relevant to the inquiry of whether Aguilar experienced past persecution. We have long held that "credible, specific threats can amount to persecution if they are severe enough" -- particularly if they are death threats. Javed v. Holder, 715 F.3d 391, 395-96 (1st Cir. 2013); see also Amouri v. Holder, 572 F.3d 29, 33 (1st Cir. 2009) ("[T]hreats of murder easily qualify as sufficiently severe harm."); Sok v. Mukasey, 526 F.3d 48, 54 (1st Cir. 2008) ("[W]e have often acknowledged that credible threats can, depending on the circumstances, amount to persecution . . . ."); Un v. Gonzales, 415 F.3d 205, 210 (1st Cir. 2005) ("[C]redible verbal death threats

- 8 -

may fall within the meaning of 'persecution.'"); Aguilar-Solis v. INS, 168 F.3d 565, 570 (1st Cir. 1999) ("[P]ersecution encompasses more than threats to life or freedom, but less than mere harassment or annoyance." (citations omitted)). Moreover, we have recognized that "the addition of physical violence, although not required, makes a threat more likely to constitute persecution." Javed, 715 F.3d at 396. The August 2008 complaint overlooked by the Board contained additional evidence of Gonzales both physically harming Aguilar and threatening to kill her. It was thus highly relevant to the issue the BIA was confronting: whether Aguilar had suffered past persecution.

The BIA's lack of meaningful analysis on this issue provides further grounds for believing it did not consider the August 2008 complaint. The BIA never mentioned that Gonzales had threatened Aguilar with death, mentioning only that he had "threatened the applicant and her family" without discussing the content of those threats. Nor did it engage with our case law regarding the ability of credible death threats to amount to past persecution, other than by attempting to undermine Aguilar's argument by citing to a case that actually supports it. The BIA cited to Lopez de Hincapie v. Gonzales, 494 F.3d 213 (1st Cir. 2007), for the proposition that "one element in the decisional calculus as to whether an asylum applicant has been persecuted involves the degree of the harm inflicted or threatened. To rise

- 9 -

to the level of persecution, the sum of an asylum applicant's experiences must add up to more than ordinary harassment, mistreatment, or suffering." Yet the BIA overlooked the very next sentence in Lopez de Hincapie, which continued: "Because threats of murder would fit neatly under this carapace, we assume, favorably to the petitioner, that she has met this prong of the test for persecution." Lopez de Hincapie, 494 F.3d at 217 (emphasis added) (citations omitted). Notably, the other two complaints the BIA did discuss do not explicitly include threats of death toward Aguilar. The July 2004 complaint says he "threatened" her and threatened to kill her current partner if she didn't leave him, but it did not specify whether Gonzales threatened Aguilar with death. The June 2008 complaint meanwhile includes insults and physical violence but no mention of death threats. Thus, the August 2008 complaint would have significant bearing on whether the objective evidence in the record included threats of death.[2] The BIA's failure to mention it -- or to even mention that Aguilar had been threatened with death -- strongly

_____

[2] The BIA similarly did not discuss Dr. LeVine's report, which also included discussion of death threats. Given that the narrative elements of this report were based primarily on Aguilar's statements and the IJ found she was not credible, we defer to the BIA to determine how much weight to give the events outlined in this report. However, in addition to the narrative contents, the evaluation is certainly probative for its determination that Aguilar suffered from symptoms consistent with Major Depressive Disorder and Post-Traumatic Stress Disorder in remission.

suggests it "completely overlooked critical evidence." Sihotang, 900 F.3d at 51; cf. Domingo-Mendez, 47 F.4th at 58 (noting that, despite the BIA's failure to mention specific facts, it did acknowledge possible effects consistent with those facts); Lin, 521 F.3d at 28 (finding "no reason to surmise that the BIA overlooked the background information in the record" where "nothing in the BIA's decision . . . is inconsistent with" that information).

Although the government concedes the BIA's mistake in stating that there were only two complaints, it urges that this "oversight . . . is mitigated by the fact that the immigration judge did in fact reference the document . . . and considered it in finding that [Aguilar] did not establish past persecution." But the BIA cannot here rely on the IJ's decision to fill holes in its own reasoning, for the following three reasons.

First, as discussed above, where the BIA does not adopt the IJ's findings but only states that they were not clearly erroneous, we review the BIA's decision alone rather than the IJ's decision. Lin, 521 F.3d at 26 (citing Georcely, 375 F.3d at 49).

Second, in determining whether the IJ's finding of no past persecution was clearly erroneous, the Board itself was required to consider all evidence relevant to that analysis. This it did not do. As the petitioner argues, the Board primarily discussed the documentary evidence in comparison with Aguilar's

testimony and did not provide a thorough analysis of whether the harm outlined in the documentary evidence compelled a finding that it rose to the level of past persecution.  Indeed, the BIA never even mentioned that Gonzales had threatened Aguilar with death, instead merely mentioning that he had "threatened the applicant and her family."  The contents of a threat have significant bearing on whether it would rise to the level of persecution.  See, e.g., Sok, 526 F.3d at 54 ("[W]e have often acknowledged that credible threats can, depending on the circumstances, amount to persecution, especially when the assailant threatens the petitioner with death . . . ." (emphasis added)).  "The agency need not spell out every last detail of its reasoning where the logical underpinnings are clear from the record."  Enwonwu v. Gonzales, 438 F.3d 22, 35 (1st Cir. 2006).  "However, the agency 'is obligated to offer more explanation when the record suggests strong arguments for the petitioner that the [agency] has not considered.'"  Id. (alteration in original) (quoting Sulaiman v. Gonzales, 429 F.3d 347, 350 (1st Cir. 2005)).  The BIA failed to meet this standard given its total lack of analysis -- or, indeed, mention -- of whether the death threats Aguilar experienced coupled with physical violence rose to the level of persecution.  Cf. Sihotang, 900 F.3d at 51 (finding the BIA abused its discretion where it "appear[ed] to have completely overlooked critical evidence").

Lastly, although the issue is not raised by the parties, the BIA should have applied de novo review rather than clear error review in determining whether the past threats and harm Aguilar experienced rose to the level of past persecution. See Matter of Z-Z-O-, 26 I. & N. Dec. 586, 590-91 (B.I.A. 2015); Matter of A-S-B-, 24 I. & N. Dec. 493, 496 (B.I.A. 2008), overruled in part on other grounds by Matter of Z-Z-O-, 26 I. & N. Dec. at 589-91. The Board reviews an IJ's findings of fact, including determinations as to credibility and the likelihood of future events, under a "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i); Matter of Z-Z-O-, 26 I. & N. Dec. at 590. It reviews all other issues, including issues of law, judgment, or discretion, under a de novo standard. 8 C.F.R. § 1003.1(d)(3)(ii). The Board has held that an IJ's findings regarding the facts underlying a hardship claim are reviewed for clear error, while the determination of whether those facts meet the legal definition of "past persecution" is reviewed de novo. Matter of A-S-B-, 24 I. & N. Dec. at 496; see also DeCarvalho v. Garland, 18 F.4th 66, 73 (1st Cir. 2021) (noting the BIA reviews de novo an IJ's determinations of how the law applies to facts, "e.g., whether [a particular] harm rises to the level of torture"). In applying de novo review, the BIA should have completed its own assessment of whether the documentary evidence provided rose to the level of past persecution. It is impossible to see how the BIA could adequately complete such an

analysis without mentioning the death threat and physical violence outlined in the August 2008 complaint.

Based on the foregoing, we conclude that the BIA failed to comply with this Court's remand order.[3]

## III.

Having determined that the BIA failed to follow our remand order, we now turn to the government's argument that we should nevertheless affirm based on the IJ's and BIA's findings that Aguilar failed to show that the Honduran government is not "unwilling or unable" to protect her from harm. We find this argument unavailing for the simple reason that neither the IJ nor the BIA addressed this issue as it regarded past persecution and therefore cannot be relied on here to invalidate Aguilar's claim for relief.

In order to constitute "persecution" for purposes of asylum and withholding of removal, harm must either be perpetrated by the government itself or by a private actor that the government is unwilling or unable to control. See Rosales Justo v. Sessions, 895 F.3d 154, 162 (1st Cir. 2018). If an individual establishes that they were subject to past persecution -- including meeting the requirement of government unwillingness or inability to

---

[3] We need not address Aguilar's other arguments for remand, as we find the BIA's failure to comply with our prior remand order sufficient to vacate the BIA's order and remand the case.

protect them -- they are entitled to a presumption that they will face persecution in the future on the basis of the original claim. See 8 C.F.R. § 208.16(b)(1)(i). The burden then shifts to the government to rebut this presumption by showing either a fundamental change in circumstances or the possibility of internal relocation to avoid persecution if relocation would be reasonable under all the circumstances. Id.

In Aguilar's case, the IJ never addressed whether she had shown that the Honduran government was unwilling or unable to protect her from the past harm perpetrated by Gonzales. The IJ cut off the inquiry into past persecution upon determining that the harm detailed in the documentary evidence Aguilar presented was insufficient to rise to the level of persecution. Instead, the IJ's sole discussion of government involvement took place under the heading "Future Persecution." The Board then affirmed the IJ's findings regarding future persecution, including that "the applicant did not show that the government of Honduras is unable or unwilling to protect her from Mr. Gonzales" (emphasis added). The determination of future unwillingness or inability to act is a different inquiry than that of past unwillingness or inability. And, importantly, if Aguilar succeeds in establishing that she experienced past persecution at the hands of a private actor that the Honduran government was unwilling or unable to control, she is entitled to a presumption of future persecution that DHS bears the

- 15 -

burden of rebutting.[4]   Therefore, the BIA's and IJ's findings on this point cannot dispose of Aguilar's claims for relief.

**IV.**

Lastly, we contend with Aguilar's request for us to find that substantial evidence compels a finding of past persecution. In line with our earlier decision regarding this same case, "[w]e take no position on the merits of the IJ's holding that the abuse reflected in the documentary evidence was not sufficiently severe to warrant relief.  This issue is best left to be addressed by the BIA in the first instance." Aguilar-Escoto, 874 F.3d at 337. Despite our remand, the BIA has yet to properly address this issue. We therefore defer to the Board to review this issue de novo on remand.  See Matter of Z-Z-O-, 26 I. & N. Dec. at 590-91; Matter of A-S-B-, 24 I. & N. Dec. at 496.

We do, however, take this opportunity to acknowledge the tension between the standards of review applied to past persecution by the BIA and circuit courts.  As the Tenth Circuit has written, "there is serious reason to question whether this court should

---

[4] Similarly, if Aguilar establishes past persecution, DHS bears the burden of showing she "could avoid a future threat to . . . her life or freedom by relocating to another part of the proposed country of removal and, under all the circumstances, it would be reasonable to expect [her] to do so."  8 C.F.R. § 208.16(b)(1)(i).  The Board's finding that "the record does not indicate that [Aguilar] would not be able to relocate in Honduras" is therefore similarly of no value in resolving her claim here. It also does not appear the IJ ever addressed this issue in the first instance.

treat the BIA's ultimate determination as to the existence of persecution (i.e., whether a given set of facts amounts to persecution) as factual in nature." Xue v. Lynch, 846 F.3d 1099, 1104 (10th Cir. 2017). The BIA itself is prohibited from reviewing an IJ's factual determinations de novo and has "specifically determined that the ultimate resolution whether a given set of facts amount to persecution is a question of law reviewed de novo." Id. (citing Matter of A-S-B-, 24 I. & N. Dec. at 496-97). Yet we and many of our sister circuits have largely applied the "substantial evidence" standard reserved for factual findings to the determination of whether a given set of facts meets the standard of persecution. See, e.g., Yong Gao v. Barr, 950 F.3d 147, 152 (1st Cir. 2020) (applying the substantial evidence standard); Martínez-Pérez v. Sessions, 897 F.3d 33, 40 (1st Cir. 2018) (same); Vicente-Elias v. Mukasey, 532 F.3d 1086, 1091 (10th Cir. 2008) ("In this circuit, the ultimate determination whether an alien has demonstrated persecution is a question of fact, even if the underlying factual circumstances are not in dispute and the only issue is whether those circumstances qualify as persecution."); Sharma v. Garland, 9 F.4th 1052, 1060 (9th Cir. 2021) ("We also review for substantial evidence the BIA's particular determination that a petitioner's past harm 'do[es] not amount to past persecution.'" (alteration in original) (quoting Villegas Sanchez v. Garland, 990 F.3d 1173, 1179 (9th Cir. 2021)));

Thayalan v. Att'y Gen., 997 F.3d 132, 137 (3d Cir. 2021) ("Whether an asylum applicant has demonstrated past persecution . . . is a factual determination reviewed under the substantial evidence standard." (quoting Voci v. Gonzales, 409 F.3d 607, 613 (3d Cir. 2005))).  But see Huo Qiang Chen v. Holder, 773 F.3d 396, 403 (2d Cir. 2014) ("[W]hether certain events, if they occurred, would constitute persecution as defined by the INA is a question of law."); Alavez-Hernandez v. Holder, 714 F.3d 1063, 1066 (8th Cir. 2013) (noting the question of whether conditions were "severe enough to constitute past persecution . . . is a question of law we review de novo").  As the Tenth Circuit observed, "[u]nless the BIA's decision in In re A-S-B- is wrong, it appears entirely likely this court should be treating BIA decisions on the ultimate question of the existence of persecution as legal in nature." Xue, 846 F.3d at 1106; see also Liang v. Att'y Gen., 15 F.4th 623, 627 (3d Cir. 2021) (Jordan, J., concurring) ("The question of what events occurred or may occur 'is factual in nature and is subject to clearly erroneous review by the BIA' and substantial evidence review by this Court; while the question of 'whether those events meet the legal definition of persecution [ ] is reviewed de novo because it is plainly an issue of law.'" (alteration in original) (quoting Huang v. Att'y Gen., 620 F.3d 372, 379, 383 (3d Cir. 2010))).  As in Xue, this issue was not raised by the parties here on appeal, and our own precedent has made clear that we apply the

- 18 -

substantial evidence standard to such determinations (even though we have never questioned the correctness of the review structure outlined by Matter of A-S-B- and Matter of Z-Z-O-).  See e.g., Yong Gao, 950 F.3d at 152; Martínez-Pérez, 897 F.3d at 40; Topalli v. Gonzales, 417 F.3d 128, 131 (1st Cir. 2005) ("We review the BIA's determination that Topalli failed to show past persecution under the deferential substantial evidence standard.").  But cf. DeCarvalho, 18 F.4th at 73 (noting in the Convention Against Torture context that "whether a person is likely to suffer a particular harm" is a finding of fact the BIA reviews for clear error whereas "whether such harm rises to the level of torture" requires applying the law to those facts and is reviewed de novo by the BIA).  We therefore leave this issue to another day.

**V.**

Given the BIA's failure to properly consider the documentary evidence in accordance with this Court's prior remand order, we **grant** the petition for review, **vacate** the Board's decision in its entirety, and **remand** for further proceedings consistent with this opinion.