# United States Court of Appeals
## For the First Circuit

No. 14-1572

NIRANJAN KHANAL; GITA KHANAL,

Petitioners,

v.

PAMELA J. BONDI, Attorney General,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Montecalvo and Kayatta,[**]
Circuit Judges.

Gregory Romanovsky, with whom Romanovsky Law Offices, Kerry E. Doyle, and Graves & Doyle were on brief, for petitioners.

Shahrzad Baghai, Trial Attorney, Office of Immigration Litigation, with whom Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, U.S. Department of Justice,

---

[*] While this case was pending, the Attorney General changed several times. Most recently, pursuant to Fed. R. App. P. 43(c)(2), Attorney General Pamela J. Bondi was substituted as the respondent.

[**] Judge Selya heard oral argument in this case and participated in the initial semble thereafter. His death on February 22, 2025, ended his involvement in this case. The remaining two panelists issued this opinion pursuant to 28 U.S.C. § 46(d).

Sabatino F. Leo, Assistant Director, Office of Immigration Litigation, Joyce R. Branda, Acting Assistant Attorney General, Civil Division, U.S. Department of Justice, Terri J. Scadron, Assistant Director, Office of Immigration Litigation, and Hillel R. Smith, Attorney, Office of Immigration Litigation, were on brief, for respondent.

February 18, 2026

**MONTECALVO, Circuit Judge**. Petitioners Niranjan Khanal ("Khanal") and Gita Khanal ("Gita"), both citizens of Nepal, seek vacatur of a Board of Immigration Appeals ("BIA") order dismissing their claims for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").[1] The BIA's order adopted the Immigration Judge's ("IJ") decision, which focused in large part on its finding that Khanal's testimony was not credible. The evidence before the IJ, however, had also included, in addition to Khanal's testimony, relevant documentary evidence and additional witness testimony purporting to certify death threats and extortion demands that Khanal allegedly faced in Nepal due to his political involvement. In denying relief, the BIA and the IJ (collectively, "the agency") did not consider this documentary evidence and additional witness testimony.

Our decision in Aguilar-Escoto v. Sessions, 874 F.3d 334 (1st Cir. 2017), presented similar issues and guides our analysis here. In Aguilar-Escoto, we held that when a petitioner provides salient evidence independent of their testimony, the agency must consider it and cannot deny their claims based on adverse

---

[1] Because Khanal was the lead respondent before the Immigration Judge and the BIA, for ease in relaying our decision, we refer to him as if he were the sole petitioner. This decision is also binding on his co-petitioner and wife, Gita. Additionally, when this appeal was filed in 2014, the Khanals' children were also petitioners, but this court subsequently dismissed them from the case, as we will explain.

- 3 -

credibility alone.  Id. at 337.  And, concerning withholding of removal claims, we clarified that the agency must use the correct legal standard, conducting an "objective assessment" of the likelihood of future persecution.  Id. at 338.

Both holdings from Aguilar-Escoto are implicated here, and we thus apply and reinforce them throughout this decision.  As we will explain, the agency ignored Khanal's potentially important documentary and testimonial evidence and applied the incorrect standard to his withholding of removal claim.  Because these failures constitute legal errors, we vacate the BIA's order and remand for further proceedings consistent with this opinion.

## I. Background

This case involves a lengthy procedural history before the immigration agencies and this court.  We begin by reviewing how this case came before us, presenting the relevant "facts from the administrative record."  See Dor v. Bondi, 161 F.4th 1, 3 (1st Cir. 2025).

Khanal entered the United States in July 2007 under a B-2 visitor visa.  In late August, he filed for asylum with U.S. Citizenship and Immigration Services ("USCIS"), listing his wife and children, who had arrived in the United States a few months before him, as derivatives on the application.[2]  In January 2009,

---

[2] Through his I-589 application form, Khanal also applied for withholding of removal and CAT relief.

USCIS denied the application and referred Khanal and his family to immigration court for removal proceedings.

## A. Immigration Court Proceedings

Khanal's merits hearing was held on March 19, 2012, before the Boston Immigration Court. He and Gita both testified before the IJ. The crux of Khanal's alleged fear of return to Nepal centered on being targeted due to his political activity as a member of the National Democratic Party of Nepal ("NDPN")[3] and his work for an international nongovernmental organization. Khanal alleged that an opposing political party, a Communist party called the Maoists, had threatened and extorted him and his family on multiple occasions in attempts to force him to cease his political activities.[4] Two of Khanal's friends with whom he had been politically involved in Nepal -- Shiva Raj Sharma and Ghorak Bist -- also testified and provided written declarations relating

---

[3] Both parties refer to this organization in their briefing as the Rastriya Prajatantra Party. We refer to it, as the IJ and BIA did, by its English translation and acronym, NDPN. We also note that before joining the NDPN, Khanal was active with a different party, the Nepali Congress.

[4] For example, Khanal testified that in April 2006, a group of twenty Maoist guerrillas came to his home and threatened him. He also testified that he received a phone call from a Maoist leader identified as "Ananta" who "threatened [] to kill [Khanal] because [he] never . . . stopped opposing [the Maoists]."

details of Khanal's political activities and the Maoist threats he had told them about.[5]

In addition to testimonial evidence, Khanal provided documentation in support of his claim. Among these were letters from: (1) the NDPN (concerning Khanal's party membership); (2) the "Communist Party of Nepal (Maoists)" (raising threats and extortion demands); (3) the Kathmandu police (purporting to certify that Khanal was a victim of Maoist threats); and (4) the "Association of the Sufferers from the Maoist Nepal Central Committee" (same). Additionally, Khanal submitted a newspaper article that identified him by name and described him as being "in

---

[5] As an example, we reproduce a summary of Shiva Raj Sharma's testimony below, as provided in the government's brief, omitting record citations contained therein for brevity:

> On direct examination, Mr. Sharma testified that he and Khanal had been friends for twenty years, and that they were both members of the Nepali Congress party. He testified that Khanal later joined the [NDPN], and that [Khanal] was "fully active" in that party. Mr. Sharma testified that he remained in contact with Khanal after [Mr. Sharma] came to the United States in 2005. He testified that Khanal told him that the Maoists had threatened [Khanal]. He asserted that Khanal came to the United States in 2006, and that, during [that] visit, Khanal told him that the Maoists were demanding "lots of donation [sic]" and that they wanted [Khanal] to become "active in the Communist Party." He stated that Khanal returned to Nepal[] but decided to come back to the United States in 2007 because the Maoists threatened to kill [Khanal] and his family.

hiding" due to "fear of punitive action from the Maoists" following extortion demands. He also included documentation about his employment and volunteer activities. And he submitted country conditions reports detailing human rights issues and political unrest in Nepal,[6] among other sources.

Because it will become relevant later, it is worth remaining for a moment with some of the documentary evidence that Khanal submitted in support of his claims. For instance, one of the Maoist letters that he purportedly received in January 2007 reads, as translated:

> The Maoist Party's recent meeting has decided that because of your not fulfilling our orders for financial assistance and your engagement in anti-Maoist activities, you must pay Rs. 1,000,000 (One million Rupees) to this party within a month as penalty. In case you can't do that you must send your elder son for the training to our newly established youth organization called []Young Communist League (YCL). Otherwise, we like [sic] to let you know by this letter that there will be necessary physical punitive action taken against you.

As another example, one of the Kathmandu police letters sets out, in part: "Khanal is the victim of the Maoist atrocities. The threats[,] such as demands of huge amount[s] of money and

---

[6] Khanal submitted the U.S. Department of State's human rights reports for Nepal for 2004, 2005, 2006, and 2010; human rights reports from Amnesty International; and reports from the "South Asia Analysis Group."

- 7 -

threat[s] on him and his family members' lives have created mental torture [for] Khanal."

On August 28, 2012, the IJ denied Khanal's applications for asylum, withholding of removal, and CAT relief. The IJ found Khanal's testimony not credible because it was "internally inconsistent," "contradicted by the other witnesses," and inconsistent with his asylum affidavit.[7] Concerning documentary evidence, the IJ noted a discrepancy between the NDPN letter that Khanal had provided, which "stat[ed] that he became a general member of the party in 1996," and his testimony explaining that he joined the party in 1998.[8] The IJ concluded that this adverse credibility determination was "fatal" to Khanal's asylum claim because the court could not determine "that these events actually occur[ed] as described."

---

[7] The IJ's decision thoroughly recounts six areas of perceived discrepancies. These concern: (1) when Khanal switched political affiliations to the NDPN; (2) when he first encountered the Maoists; (3) the extent to which he faced physical abuse by the Maoists and the nature of that abuse; (4) the timing and amount of Khanal's extortion payments to the Maoists; (5) the incident where Maoist guerrillas allegedly entered Khanal's home; and (6) Khanal's claim that he went into hiding.

[8] Khanal began his testimony by pointing out that his asylum affidavit mistakenly stated 1996 as the year he joined the NDPN, when in fact it was 1998. While acknowledging the possibility of this misstatement, the IJ found that this clarification failed to explain how Khanal had obtained the NDPN letter -- which also listed 1996 as the year that his party membership began.

As for withholding of removal, the IJ concluded that because Khanal had fallen short of asylum's "well-founded fear" standard -- implicitly due to his lack of credibility -- he could not meet withholding of removal's more demanding "more likely than not" standard.

Finally, while recognizing that the adverse credibility determination did not doom a CAT claim, the IJ nonetheless found that Khanal had failed to demonstrate a likelihood of torture "with the consent or acquiescence of the government of Nepal" and denied that claim, too. In so concluding, it referred to one of the country conditions reports that Khanal had submitted in support of his application. The IJ acknowledged the report's findings about Maoist killings, abductions, and torture perpetrated by the Maoists from 1996 to 2006, but found that Khanal had not shown that he would "be individually targeted for such treatment."

## B. BIA Appeal

Khanal timely appealed to the BIA, contending that the IJ "misapplied the relevant law" and "ignored substantial evidence supporting [his] claims." He primarily argued that the IJ erred in making an adverse credibility determination and in finding that he had not demonstrated past persecution nor a well-founded fear of future persecution.

On April 29, 2014, the BIA dismissed the appeal. It "adopt[ed] and affirm[ed]" the IJ's decision and offered

- 9 -

additional reasoning of its own. Specifically, the BIA upheld the IJ's adverse credibility determination and "conclusion that [Khanal] failed . . . to establish [his] eligibility for asylum, withholding of removal, and protection under the CAT." Concerning credibility, it referenced the inconsistencies between Khanal's affidavit, application, and testimony. "Without credible testimony," it concluded, Khanal had failed to meet "his burdens of proof and persuasion for asylum and withholding of removal."

The BIA also upheld the IJ's denial of CAT relief but did so on narrower grounds than the IJ. It concluded that Khanal's CAT claim was "based on the same," "not credible" evidence that sustained his other claims. The agency also concluded that he had failed to "produce evidence, independent of his incredible testimony, to demonstrate that he [would] more likely than not be subject to torture" if returned to Nepal.

## C. Petition Before this Court

On May 28, 2014, Khanal and Gita, along with their two children, petitioned for review before this court. In the nearly twelve years since then, a complicated procedural history transpired. This court dismissed the Khanal children from the appeal in August 2015.[9] At that same time, we held the case in

---

[9] This court dismissed the children after USCIS granted their applications for Deferred Action for Childhood Arrivals (commonly known as "DACA"), and the BIA subsequently reopened and administratively closed their removal proceedings.

abeyance pending adjudication of Khanal and Gita's applications for Temporary Protected Status ("TPS")[10] before USCIS and their motion to reopen and administratively close their removal proceedings before the BIA. USCIS later granted their TPS applications (and subsequent renewal applications), but their efforts to terminate their removal proceedings based on TPS ultimately proved unsuccessful. In August 2024, this court vacated its prior orders holding the case in abeyance. The parties filed supplemental briefing in late 2024 and presented oral argument in January 2025.

## II. Standard of Review

We focus our review of immigration agency decisions on the BIA's final decision. Dor, 161 F.4th at 5. Where the BIA "adopted the IJ's reasoning, we review the IJ's decision, as supplemented by the BIA." Sam v. Holder, 752 F.3d 97, 99 (1st Cir. 2014). When reviewing the BIA's and IJ's decisions

---

[10] The Secretary of Homeland Security can designate a country for TPS when nationals from that country would face serious risks if returned there, for example, due to "ongoing armed conflict," "environmental disaster," or other "extraordinary and temporary conditions." See 8 U.S.C. § 1254a(b)(1); see generally Homeland Security Act of 2022, Pub. L. 107-296, 116 Stat. 2135 (2002) (transferring the former Immigration and Naturalization Service's functions to the Department of Homeland Security). A grant of TPS protects beneficiaries from removal to the designated country during a defined period and allows them to obtain work authorization. 8 U.S.C. § 1254a(a)(1).

collectively, "we refer to the BIA and IJ as 'the agency.'" Khalil v. Garland, 97 F.4th 54, 61 (1st Cir. 2024).

We review the agency's factual findings under the deferential substantial evidence standard, "upholding them 'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Ramos-Hernandez v. Bondi, 163 F.4th 44, 50 (1st Cir. 2025) (quoting Alves v. Bondi, 128 F.4th 297, 298 (1st Cir. 2025)). We review the agency's legal conclusions de novo.[11]  Id.

### III. Discussion

On appeal, the parties raise two groups of arguments. The first concerns the merits of Khanal's asylum, withholding of removal, and CAT claims.  The second involves supplemental arguments about whether remand and termination of proceedings is required pursuant to Department of Homeland Security regulations promulgated during the pendency of these proceedings that implicate TPS-holders.[12]  Because our decision hinges on the

---

[11] We have said that in our de novo review of the agency's decisions, we lend "some deference to its interpretations of statutes and regulations related to immigration matters." Espinoza-Ochoa v. Garland, 89 F.4th 222, 230 (1st Cir. 2023) (quoting Aldana-Ramos v. Holder, 757 F.3d 9, 14 (1st Cir. 2014)). And because the parties in this case "have raised no questions about deference to agency interpretations," we "do not address potential implications, if any, of Kisor v. Wilkie, 588 U.S. 558, 139 S. Ct. 2400, 204 L. Ed. 2d 841 (2019), or Loper Bright Enters. v. Raimondo, 603 U.S. 369, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024)" here.  See Dor, 161 F.4th at 6 n.7; Fleurimond v. Bondi, 157 F.4th 1, 5 n.1 (1st Cir. 2025).

[12] In supplemental briefing, Khanal argues that regulations concerning BIA docket management that took effect on July 29, 2024

- 12 -

parties' merits arguments, we do not address their supplemental arguments.[13]

Turning to the merits, Khanal raises many claims, but we only address those required to "dispense with this . . . case" and thus "express no opinion" on any arguments not discussed here. See Molina-Diaz v. Wilkinson, 989 F.3d 60, 63 (1st Cir. 2021). He first challenges the agency's adverse credibility determination. He argues that the IJ ignored his demeanor; failed to consider corroborating "evidence, documentation[,] and witnesses"; and did not inquire into perceived discrepancies. Additionally, Khanal challenges the IJ's persecution findings. He alleges that the Maoists' "direct death threats" against him constitute past persecution, or alternatively, establish his well-founded fear of future persecution. He contends that these threats were "well-documented" in the record, including through letters he

---

"require[,] or at least permit[,]" the BIA "to terminate removal proceedings" for TPS-holders. (Citing 8 C.F.R. § 1003.1(m)(1)(i)(A), (m)(1)(ii)(C).) Thus, he contends that remand to the BIA for termination of proceedings is warranted because he and Gita have TPS. The government's supplemental brief did not address this question, instead focusing on the merits of Khanal's denied claims. At oral argument, the government maintained that termination of proceedings under the new regulations was up to the BIA's discretion.

[13] While this appeal was pending, Khanal and Gita moved to reopen and terminate their removal proceedings before the BIA based on the aforementioned regulations. They now separately challenge the BIA's denial of that motion in Case No. 25-2139, also before this court.

received from the Maoists and a police report. He also alleges that the IJ erred by failing to evaluate country conditions reports. He argues that the documentary evidence, along with the supporting witnesses' testimony, confirmed that a similarly situated person -- i.e. someone who is "politically active in democracy and human rights activities" in Nepal -- "would fear persecution" from the Maoists. Finally, Khanal argues that the BIA erred in dismissing his CAT claim based on the IJ's "erroneous negative credibility finding."

The government counters that "[t]he evidence does not compel the conclusion that Khanal presented credible testimony in support of his applications for asylum and withholding of removal." It argues that Khanal's testimony was: internally inconsistent; in conflict with his sworn statement; in conflict with Gita's testimony; and in conflict with his corroborating documents.[14] Therefore, says the government, the IJ "reasonably denied" Khanal's asylum claim based on an adverse credibility finding. Additionally, it argues that failure to establish asylum eligibility necessarily means that an applicant cannot meet the higher standard required for withholding of removal. Finally, the

---

[14] The government's brief details over a dozen pieces of documentary evidence that Khanal presented to the IJ in support of his claims. But notably, its argument that Khanal's testimony conflicted with his corroborating evidence highlights just one of these documents -- the NDPN letter previously discussed.

- 14 -

government maintains that the agency did not err in denying Khanal's CAT claim because this claim relied on the same, not credible, testimony as his other claims.

As a threshold matter, because Khanal applied for relief on August 28, 2007, the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 302-23 (2005), guides our analysis. See 8 U.S.C. § 1158(b)(1)(B) (outlining the burden of proof for asylum applicants); id. § 1231(b)(3)(C) (stating that the same standards required for asylum applicants to sustain their burden of proof apply to applicants for statutory withholding of removal); see also id. § 1229a(c)(4); Molina-Diaz, 989 F.3d at 63-64 (referring to the REAL ID Act's provisions on corroboration, as codified, where the petitioner's withholding of removal application postdated enactment of the Act).

Under this standard, testimony alone "may be sufficient to sustain the applicant's burden without corroboration," but only if it "is credible," "is persuasive," and sufficiently shows "that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii). When evaluating whether an applicant has sustained their burden, an IJ "may weigh the credible testimony along with other evidence of record." Id. Although an adverse credibility determination alone will "not necessarily defeat an asylum application," it will if the claim "rests exclusively on [the applicant's] testimony." Ahmed v. Holder, 765 F.3d 96, 101 (1st Cir. 2014) (emphasis added).

Conversely, where an asylum applicant is found not credible, "the presence of corroboration may save" their claim.  Id.

We previously discussed these standards in Aguilar-Escoto, a case that guides our analysis here.  874 F.3d at 337-38.  In Aguilar-Escoto, the petitioner appealed the denial of her withholding of removal claim.[15]  Id. at 335.  In addition to testifying before the IJ about "relentless physical, emotional, and sexual abuse" at the hands of her ex-husband, she had provided documentation of the alleged abuse, including "police reports, a family court order, a medical record, and two declarations."  Id. at 335-36.  The IJ found the petitioner not credible and separately addressed her documentary evidence.  Id. at 336.  Determining that "the abuse reflected therein was not sufficiently serious and persistent to warrant relief," the IJ denied her claim.  Id.  On appeal, the BIA upheld the IJ's decision "based solely on [the] credibility ruling," failing to even "mention the IJ's separate treatment of the documentary evidence."  Id.

That, we held, was error.  Id.  Instead, "where the applicant provides evidence other than [their] own testimony," "the agency 'must consider that evidence' and may not 'rely solely

_____

[15] In Aguilar-Escoto, the petitioner was not eligible for asylum because her prior order of removal had been reinstated. Id. at 335.  Thus, she applied only for withholding of removal and CAT relief.  Id. at 335, 336 n.1.  On appeal, she did not challenge the denial of her CAT claim.  Id. at 336 n.1.

on an adverse credibility determination.'" Id. at 337 (quoting Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005)). Recognizing that the petitioner's documentary evidence, "if believed, was sufficient to establish multiple acts of domestic violence against [the petitioner], . . . the BIA's failure to consider or even acknowledge th[at] evidence require[d] remand." Id.

Here, too, Khanal's claim does not rely exclusively on his testimony. Recall that Khanal provided multiple forms of documentary evidence, including letters from the Maoists, the Kathmandu police, and the Association of the Sufferers from the Maoist Nepal Central Committee; a news article naming him; and country conditions reports. In addition to Khanal and Gita's testimony, Mr. Sharma and Mr. Bist also testified at the merits hearing. Because Khanal provided testimonial and documentary evidence apart from his own testimony, the agency was required to "consider" it and could not base its decision "solely" on credibility. Id.

But we cannot determine whether the agency considered this evidence. See Contreras v. Bondi, 134 F.4th 12, 22 (1st Cir. 2025) (concluding that there was "strong reason to believe" that the BIA had ignored "key relevant evidence" where it merely "acknowledged the existence" of a pertinent psychological report "in a single-sentence summary" but did not "mention, let alone

engage with" its findings (internal citations omitted)). The BIA's decision focused on the IJ's adverse credibility finding. And within that discussion, the BIA almost exclusively compared Khanal's testimony to his asylum application and affidavit (along with a one-sentence reference to Gita's testimony). It did not mention testimony from the additional witnesses, Mr. Sharma and Mr. Bist, nor documentary evidence, such as the letters from the Maoists and the Kathmandu police. In fact, the only piece of documentary evidence that the BIA referenced was the NDPN letter (highlighting the date discrepancy that the IJ had found undercut Khanal's credibility). The BIA, in upholding the IJ's credibility finding, concluded that, without Khanal's credible testimony, he had failed to meet his burden of proof for asylum and withholding of removal.

Similarly, we cannot determine that the agency assessed Khanal's documentary evidence and additional witness testimony by reviewing the IJ's decision. It, too, focused on perceived discrepancies between Khanal's testimony, asylum application, and affidavit. And it made no separate findings about Khanal's other proffered evidence that might assure us that it was not ignored.[16]

---

[16] In discussing credibility, the IJ mentioned the NDPN letter (as discussed), and made passing reference to the January 2007 letter from the Maoists -- but only as it related to the timing of Khanal's alleged period of hiding. The IJ did not otherwise evaluate these documents nor engage with the rest of Khanal's documentary evidence. Similarly, in summarizing the testimony

Contra Aguilar-Escoto, 874 F.3d at 336-37 (observing that the IJ had "separately address[ed]" the petitioner's documentary evidence apart "from [the petitioner's] discredited testimony" and concluding that the BIA erred by failing to review the IJ's findings about said evidence). Instead, like the BIA, the IJ deemed the adverse credibility determination "fatal" to Khanal's asylum claim, finding that -- due to that determination alone -- Khanal could not meet his burden of demonstrating past persecution nor a well-founded fear of future persecution.

Certainly, the agency is not required to "discuss every piece of evidence offered," but it must "consider all relevant evidence in the record." Id. at 337 (quoting Lin v. Mukasey, 521 F.3d 22, 28 (1st Cir. 2008)). It cannot "turn[] a blind eye to key relevant evidence." See Aguilar-Escoto v. Garland, 59 F.4th 510, 515 (1st Cir. 2023) ("Aguilar-Escoto II"); Sihotang v. Sessions, 900 F.3d 46, 51 (1st Cir. 2018) (noting that the BIA cannot ignore "salient facts" and must "fairly appraise the record").

Here, documents and testimony purporting to corroborate Khanal's political activities and the Maoists' threats of extortion and physical harm against him are undoubtedly relevant

_____

heard at the merits hearing, the IJ set forth the contents of Mr. Sharma and Mr. Bist's testimony but offered no analysis of this evidence in its findings of fact and conclusions of law.

to considerations of past persecution and a well-founded fear of future persecution -- particularly so where Khanal alleges that they amounted to "death threats."[17] See Un v. Gonzales, 415 F.3d 205, 210 (1st Cir. 2005) (noting that "credible verbal death threats may fall within the meaning of 'persecution'"); see also Aguilar-Escoto II, 59 F.4th at 516 ("We have long held that 'credible, specific threats can amount to persecution if they are severe enough' -- particularly if they are death threats." (quoting Javed v. Holder, 715 F.3d 391, 395-96 (1st Cir. 2013))). Therefore, we hold that the agency committed legal error when it "failed to consider" Khanal's "potentially significant documentary evidence" and additional witness testimony. See Aguilar-Escoto, 874 F.3d at 335. And, accordingly, we must remand for the agency to determine in the first instance whether, "setting [Khanal's] testimony" aside, the rest of his evidence "entitled [him] to relief." See id. at 337.

Separately, and again mirroring Aguilar-Escoto, we must also remand because the agency applied an erroneous legal standard to Khanal's withholding of removal claim. In Aguilar-Escoto, we noted that, although asylum and withholding of removal share similarities, they are "not identical." Id. at 337. Withholding of removal, for one, "requires a higher likelihood of persecution

---

[17] We make no judgment about the sufficiency of Khanal's evidence -- that determination is properly reserved to the IJ.

than asylum" -- the "'more likely than not' standard." Id. (citing Romilus v. Ashcroft, 385 F.3d 1, 8 (1st Cir. 2004)). But, we explained, the asylum standard is "more exacting" in "a different sense," in that the applicant must subjectively fear persecution and their fear must be "objectively reasonable." Id. at 337-38 (quoting, in the third instance, Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004)). Withholding of removal, in contrast, "concern[s] only . . . objective evidence of future persecution." Id. at 337 (emphasis added) (quoting Paul v. Gonzales, 444 F.3d 148, 155-56 (2d Cir. 2006)); see INS v. Cardoza-Fonseca, 480 U.S. 421, 430 (1987).

In Aguilar-Escoto, we observed that, had the petitioner applied for asylum, the BIA may have been right to conclude that she had not shown a "subjectively genuine fear" of persecution without credible testimony. Id. at 338. But, because her claim was for withholding of removal, the IJ was required to consider her documentary evidence that might objectively show her likelihood of future persecution. Id. Therefore, the BIA's "failure to apply the appropriate, purely objective standard" constituted "an independent basis for remand." Id.

The same is true here. We have recounted that Khanal applied for asylum and withholding of removal (as well as CAT relief, which we will address in a moment). In reviewing Khanal's case, the agency concluded that because Khanal had not met his

burden to demonstrate eligibility for asylum (due to his lack of credibility), he thus could not meet withholding of removal's "more stringent 'more likely than not' standard." But this is exactly the approach that we rejected in Aguilar-Escoto. See id. ("Rather than embarking on th[e] objective assessment [required for withholding of removal], the BIA fell back on the familiar refrain that, because 'the applicant did not establish eligibility for asylum, it follows that [the applicant] cannot establish eligibility for withholding of removal, which has a higher burden of proof.'").[18] As in Aguilar-Escoto, remand is required here on this separate ground to allow the BIA "to apply the appropriate, purely objective standard" to Khanal's withholding of removal claim. Id.

Finally, we address Khanal's denied CAT application. In upholding the IJ's decision, the BIA held that Khanal's CAT claim was "based on the same," "not credible" evidence as his other claims. The BIA also reasoned that Khanal had not put forth evidence "independent of his incredible testimony," to show a likelihood of torture if returned to Nepal. We find, however, that as with its dismissal of Khanal's asylum and withholding of

---

[18] We further reinforced this point when the petitioner in Aguilar-Escoto appealed to us for a second time. See Aguilar-Escoto II, 59 F.4th at 514 (explaining that "a lack of credibility" does not doom a withholding of removal claim, since this claim "requires only an objective showing rather than a subjective one").

removal claims, the BIA erroneously depended on the premise that Khanal had not presented evidence apart from his testimony in dismissing his CAT claim. As we have explained, the agency failed to consider or even acknowledge documentary evidence purporting to corroborate "death threats." And such documentation is "potentially relevant" not only to determining a likelihood of persecution, but also a likelihood of torture. Cf. Pineda-Maldonado v. Garland, 91 F.4th 76, 80 (1st Cir. 2024) ("Mental pain or suffering caused by or resulting from threats of imminent death constitutes torture." (citation modified)). Thus, we must also vacate and remand the BIA's order denying Khanal's CAT claim. As we do, we "express no view on the ultimate merits of the issues that remain in dispute on remand." Escobar v. Garland, 122 F.4th 465, 480 (1st Cir. 2024).

## IV. Conclusion

To summarize, Khanal provided potentially significant evidence independent of his testimony that bears on his likelihood of future persecution and torture -- as relevant to his asylum, withholding of removal, and CAT claims. Under our precedent in Aguilar-Escoto, the agency erred by failing to consider that evidence. And specific to withholding of removal, it also erred by failing to apply the correct, objective standard. For these reasons, we grant the petition for review, vacate the BIA's order

denying asylum, withholding of removal, and CAT relief, and <u>remand</u> to the BIA for proceedings consistent with this decision.